UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID E. CLARK, | ) | CASE NO. 4:07 CV 941 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| N. JOHNSTON, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On March 30, 2007, pro se plaintiff David E. Clark filed this action under 42 U.S.C. § 1983.  He filed an amended complaint on June 27, 2007.  The amended pleading is asserted against Ohio State Penitentiary ("OSP") Sergeant N. Johnston, OSP Unit Manager Ms. L. Johnson, OSP former Unit Manager Art James, OSP Deputy Warden Mr. Remmick, Lieutenant Carter, Corrections Officer Lyons, OSP Assistant Inspector Ted Jackson, OSP Inspector Tracy England, OSP Paralegal Ms. Darnell Brady, OSP Assistant Investigator Mr. Wylie, OSP Administrative Assistant, Ms. Diana Carter, former OSP Sergeant Mr. Shabazz, OSP Captain Williams, OSP Lieutenant Williams, OSP Legal Department Supervisor Mrs. Linda Gabaner, Ms. Salata, OSP Mail Room Supervisor Lieutenant Bright, and "John Doe Mail Room Officer." (Am. Compl. at 1.)  Mr.

Clark contends that he was deprived of personal property and subjected to harassment and retaliation.  He seeks monetary damages, and injunctive relief.

## Background

Mr. Clark is currently a prisoner at OSP, Ohio's "super max" prison.  He claims that on March 28, 2005, "Correctional Officer Lyons and Sgt. N. Johnston were responsible for depriving me of various items of personal property by ignoring and manipulating established policy which violated my 14th Amendment property rights . . . ." (Am. Compl. at 2.)  He asserts that he has no adequate state law remedy because property claims against the State of Ohio are heard in the Ohio Court of Claims which he contends "refuses to adhere to the 'preponderance of the evidence' standard and is biased in favor of the state." (Am. Compl. at 3.)  He also states that the remedy available in the Court of Claims is inadequate because the Court does not include postage and copying costs in its award of damages.

Mr. Clark also asserts that "the state and institution policies are inadequate regarding the 2.4 cubic feet and pack-up procedures."  (Am. Compl. at 3.)  He states that this policy was enforced against him selectively in violation of the Equal Protection Clause.

Mr. Clark claims the 2.4 cubic feet and pack-up procedures policy was enforced to prevent him from keeping in his cell legal records pertaining to his criminal conviction, his civil case, and current grievances.  He indicates he was told his documents did not pertain to current cases and therefore did not qualify for the exemption from the limitation on the amount of personal property that inmates are permitted to store in their cells.  He asserts he was denied access to the courts.  He also states that "once again Sgt. Johnston, along with Unit Manager (U/M) Johnson, was the hearing officer on my ticket for this even thought they were the ones who ordered it written."

(Am. Compl. at 4.)

On May 12, 2005, Ohio Department of Rehabilitation and Correction (ODRC) officials came to OSP. As these officials were taking a tour of the facility, Mr. Clark gained the attention of the ODRC Chief Legal Counsel and spoke with him about his legal property issues. He claims the Unit Manager Administrator, Mr. James, "interjected himself in the conversation." (Am. Compl. at 4.) Mr. Clark states that Mr. James "didn't like my complaints about his job performance" and had him removed to the segregation unit. (Am. Compl. at 4.) Mr. Clark contends that Mr. James later came to the segregation unit and told him that he would be putting Mr. Clark into the 4B administrative segregation unit for a protracted period of time. Mr. Clark claims Mr. James wrote a false conduct report for "Disrespect." He claims the conduct ticket was written "in retaliation, violating [his] First Amendment rights." (Am. Compl. at 4.)

Mr. Clark indicates that Mr. James knew one conduct ticket for Disrespect would not be sufficient to secure his placement in administrative segregation. He claims therefore that Mr. James prompted Unit Manager Johnson to write another false conduct report which pertained to an incident which occurred weeks earlier. He claims this is a violation of his First Amendment rights.

When Mr. Clark was released from segregation, he claims Mr. James and Ms. Johnson "had another inmate entrap me for a 3-way phone call . . .." (Am. Compl at 4.) He indicates he was placed in segregation for misuse of the telephone. He contends that there is no rule against making 3-way telephone calls as long as no criminal activity is involved. He alleges that he was kept in administrative segregation for 300 days. He asserts that the action violated his First Amendment rights because it was "done in retaliation." He further asserts that it violated his right to due process because the behavior did not violate a rule and therefore the charge of misusing the

3

telephone is unconstitutionally vague.

Finally, Mr. Clark alleges that a piece of clearly marked legal mail postmarked June 22, 2005 was opened outside of his presence and delivered with the regular mail, in violation of his First and Sixth Amendment rights.

**Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). The district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).

**Parties**

The court notes there are no allegations in the amended complaint against many of

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

the defendants. While Sergeant N. Johnston, OSP Unit Manager Ms. L. Johnson, OSP former Unit Manager Art James, Lieutenant Carter, Corrections Officer Lyons, OSP Mail Room Supervisor Lieutenant Bright, and "John Doe Mail Room Officer" are mentioned in the complaint or reasonably identifiable from the allegations, the same cannot be said for the remaining defendants. A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The amended complaint simply contains no facts which reasonably associate Deputy Warden Remmick, Assistant Inspector Ted Jackson, Institutional Inspector Tracy England, Paralegal Ms. Darnell Brady, Assistant Investigator Mr. Wylie, Administrative Assistant Diana Carter, former Sergeant Shabazz, Captain Williams, Lieutenant Williams, Legal Department Supervisor Mrs. Linda Gabaner, or Ms. Salata, to any of the claims set forth in that pleading. These defendants are dismissed from this action.

### Due Process - Deprivation of Property

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." It does not prohibit every deprivation by the state of a person's life, liberty or property. Harris v. City of Akron, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. Id.

To prevail on a procedural due process claim, the plaintiff must plead and prove either (1) that he was deprived of property as a result of an established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant

to a random and unauthorized act and that available state remedies would not be adequate to redress the deprivation of property. Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir 1991); see Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983). There is nothing in the amended complaint which suggests Mr. Clark is challenging an established state procedure, statute or local ordinance as a denial of procedural due process. Instead, it appears he is asserting he was deprived of his property due to unauthorized acts of the defendants.

As an initial matter, with the exception of the damage done to Mr. Clark's television, there is no indication that he suffered an unconstitutional taking of property. The amended complaint indicates he retained ownership of the property he was required to remove from his cell and was able to mail it out of the institution. The fact that he was not able to store it in the location he desired does not necessarily amount to a deprivation of property for Fourteenth Amendment purposes. See Pearce v. Sapp, No. 97-6373, 1999 WL 503568 at *2 (6th Cir. July 9,1999).

To the extent that Mr. Clark has sustained a deprivation of property, he still fails to state a claim for the denial of procedural due process. Because his claim is based upon alleged unauthorized acts of the defendants, Mr. Clark must also plead and prove that state remedies for redressing the wrong are inadequate. Macene, 951 F.2d at 706; Vicory, 721 F.2d at 1064. Mr. Clark acknowledges that a remedy is available in the Ohio Court of Claims. See Haynes v. Marshall, 887 F.2d 700, 704 (6th Cir.1989). He states, however, that the remedy is inadequate because the Court of Claims "refuses to adhere to the 'preponderance of the evidence' standard and is biased in favor of the State." (Am. Compl. at 3.) He further claims that the Court of Claims will not allow him to recover the cost of postage and copies which he contends can be a significant part of the damages he seeks. Although the state remedies may not provide the respondent with all the

relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are inadequate to satisfy the requirements of due process. Parratt v. Taylor, 451 U.S. 527, 544 (1981). Moreover, a remedy is not inadequate simply because the plaintiff did not prevail on his case. The remedies provided by the Court of Claims could have fully compensated the respondent for the property loss he suffered and they are sufficient to satisfy the requirements of due process. There are no allegations in the amended complaint reasonably suggesting that this state remedy is inadequate.

### Due Process - Segregation

Mr. Clark also asserts he was denied due process when he was placed in disciplinary and then administrative segregation. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir.1993). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Placement in administrative or disciplinary segregation alone does not constitute an atypical and significant hardship on the inmate. Mackey v. Dyke, 111 F.3d 460, 463 (6th Cir.1997); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir.1995). There are no allegations in the amended complaint which indicate that the conditions to which he was exposed presented a significant hardship beyond that which is expected in the course of ordinary prison life.

### Equal Protection

Mr. Clark asserts that the defendants denied him equal protection of the law by

selectively enforcing the property rules against him. In making an equal protection challenge, the plaintiff bears the initial burden of demonstrating that a discrimination of some substance has occurred against him which has not occurred against other individuals who were similarly situated. City of Cleburne,Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Clements v. Flashing, 457 U.S. 957, 967 (1982). Mr. Clark, however, does not make this allegation. There is no suggestion that other inmates in the supermax penitentiary in the same security classification as the plaintiff were permitted to possess property in excess of the limitation. Without such an allegation, there can be no equal protection violation.

      Even if Mr. Clark had alleged that he received disparate treatment, his equal protection claim must still fail. Merely treating two groups differently does not violate the Equal Protection Clause. Rawls v. Sundquist, No. 96-5931, 1997 WL 211289, at *1 (6th Cir. Apr. 28, 1997). The administration by state officers of a state statute or regulation neutral on its face, which results in unequal application to those entitled to be treated alike, is not a denial of equal protection unless there is shown to be intentional or purposeful discrimination for an unlawful reason. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Charles v. Baesler, 910 F.2d 1349, 1356 (6th Cir. 1990). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker...selected...a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." Personnel Admin. of Mass. v. Feeney, 442 U.S. 256, 279 (1979); Coyne v. City of Sommerville, 972 F.2d 440, 445 (1st Cir. 1992). A discriminatory purpose will not be presumed. Tarrance v. State of Florida, 188 U.S. 519, 510 (1903). There is no indication in the pleading that the enforcement of the property limitations was done with a purposeful intent to discriminate against Mr. Clark because

8

of his membership in a suspect class. He does not mention a particular suspect classification in the pleading. The amended complaint contains no facts which reasonably indicate that any of the elements of an Equal Protection claim were present in plaintiff's prosecution.

### Eighth Amendment

Mr. Clark also contends that Lieutenant Carter subjected him to cruel and unusual punishment by verbally challenging Mr. Clark to a physical altercation. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. Id. Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 503 U.S. 1,8 (1992). An Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness. Wilson v. Seiter, 501 U.S. 294 (1991); see also Hudson v. McMillian, 503 U.S. 1 (1992); Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir.1996). Verbal harassment and offensive comments are generally not cognizable as constitutional deprivations. See Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987). There are no facts alleged in the pleading which suggest that this incident presents the type of extreme and serious deprivation which would invoke the Eighth Amendment.

### Access to Courts

Prisoners have a First and Fourteenth Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 354 (1996). In assessing whether a State has violated that right, the

plaintiff must demonstrate that he suffered an "actual injury," see Harbin-Bey v. Rutter, 420 F.3d 571, 578 (6th Cir.2005), and, if so, that more than mere negligence by the state actor caused the injury. See Gibbs v. Hopkins, 10 F.3d 373, 379 (6th Cir.1993). The injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[2] Id. at 355.

Mr. Clark does not allege that he suffered an actual injury as a result of the conduct of any of the defendants. He states that the legal materials which he was compelled to mail out of OSP related to his current criminal conviction, a civil class action in which he is class member (Austin v. Wilkinson), and complaints and grievances. As for his current criminal conviction, the court notes that Mr. Clark was convicted of aggravated murder, attempted aggravated murder, two counts of aggravated burglary, and one count of aggravated arson on August 27, 1991. His convictions were affirmed on appeal in 1994. See State v. Clark, No. 13435, 1994 WL 171223 (Ohio App. 2 Dist. May 4, 1994). Mr. Clark appealed that decision to the Ohio Supreme Court, which declined to hear the matter. State v. Clark, 71 Ohio St. 3d. 1411 (Nov. 23, 1994). He filed petitions for post-conviction relief on August 1, and November 25, 1996. See State v. Clark, No.

---

[2] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355.

16463, 1998 WL 271853 (Ohio App. 2 Dist May 29, 1998). The denial of those petitions by the trial court was upheld on appeal. Id. On May 4, 1999, he filed a pro se motion for a new trial and requested an evidentiary hearing, which the trial court overruled without a hearing. See State v. Clark, No. 17839, 2000 WL 1726851 (Ohio App. 2 Dist Nov. 22, 2000). That decision was also upheld on appeal in 2000. Id. There is no indication that Mr. Clark filed any other challenges to his conviction after 2000. He does not specify any viable remedy which the defendants prevented him from pursuing when his legal documents were removed from his cell in 2005. Similarly, although he claims that complaints and grievances were also in the box of legal materials, he provides no reasonable indication that any of the defendants prevented him from pursuing a particular non-frivolous legal action in court. Finally, the court notes that Austin v. Wilkinson is a class action lawsuit, in which Mr. Clark, as a member of the class, is one of many plaintiffs. The class is represented by counsel. He has not alleged that the removal of documents which pertain to the class action in any way caused the rejection of any claims asserted in that action. Absent allegations suggesting that Mr. Clark suffered an actual injury, he cannot sustain a cause of action for denial of access to the courts.

  Mr. Clark also alleges that a piece of clearly marked legal mail, postmarked June 22, 2005, was opened outside of his presence and delivered with the regular mail. There is nothing in the amended complaint, however, that would suggest that the injury was caused by anything more than mere negligence by the state actor. See Gibbs, 10 F.3d at 379; Simkins v. Bruce, 406 F.3d 1239, 1242 (10th Cir.2005) ("when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs."). The mere fact that one piece of legal mail was mishandled does not state a claim of a constitutional violation. See

Gibbs, 10 F.3d at 379.

### Retaliation

Finally, Mr. Clark contends that he was the subject of retaliation. The amended complaint contains two retaliation claims. The first of these claims pertains to his personal property dispute. The other claim pertains to his placement in segregation for speaking with the ODRC Legal Counsel. To state a prima facie case for retaliation, plaintiff must establish that he engaged in protected conduct; that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and that a causal connection exists between the first two elements. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

Mr. Clark first asserts, "[o]n or about March 28th, 2005, Correctional Officer Lyons and Sgt. Johnston were responsible for depriving me of various items of personal property by ignoring and manipulating established policy." (Am. Compl. at 2.) He concludes that his "1st and 6th Amendment rights were violated because these adverse actions were taken against me for exercising my rights to access to the courts and filing complaints and grievances." (Am. Compl. at 3.) An inmate has a First Amendment right to file grievances and civil rights complaints against prison officials. See Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996). However, to state a constitutional claim, Mr. Clark must not only show he exercised this First Amendment right, but also must demonstrate that adverse actions were taken against him which were motivated, at least in part by the grievances he filed. Thaddeus-X, 175 F.3d at 394. Aside from stating that Officer Lyons and Sergeant Johnston were responsible for depriving him of property, he does not specify what actions these individuals took. There is no indication to which actions the plaintiff is referring and whether any of those actions would deter a person of ordinary firmness from continuing to

engage in that protected conduct. The claim against these individuals is stated entirely as a legal conclusion. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also, Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

Mr. Clark also asserts that Unit Manager Administrator Art James and Unit Manager Johnson retaliated against him for exercising his First Amendment rights. He claims Mr. James put him segregation for speaking to an ODRC official about his property dispute, and conspired with Ms. Johnson to keep him in administrative segregation in retaliation for complaining about Mr. James to the ODRC official. These retaliation claims meet the basic pleading requirements of Federal Civil Procedure Rule 8 and are not subject to dismissal under 28 U.S.C. § 1915(e).

## Conclusion

For all of the foregoing reasons, plaintiff's claims against Deputy Warden Mr. Remmick, Assistant Inspector Ted Jackson, Institutional Inspector Tracy England, Paralegal Ms. Darnell Brady, Assistant Investigator Mr. Wylie, Administrative Assistant, Ms. Diana Carter, former Sergeant Shabazz, Captain Williams, Lieutenant Williams, Legal Department Supervisor Mrs. Linda Gabaner, and Ms. Salata are dismissed pursuant to 28 U.S.C. § 1915(e). His due process, equal protection, Eighth Amendment, and access to courts claims are also dismissed pursuant to 28 U.S.C. § 1915(e). Mr. Clark's retaliation claims are dismissed against Sergeant Johnston and Corrections Officer Lyons. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3),

that an appeal from this decision could not be taken in good faith.[3] This action will proceed solely against Ms. L. Johnson and Mr. Art James on Mr. Clark's retaliation claim. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants.

       IT IS SO ORDERED.


Dated: 7/12/2007                              *s/ Sara Lioi*
                                             HON. SARA LIOI
                                             UNITED STATES DISTRICT JUDGE

---

[3]     28 U.S.C. § 1915(a)(3) provides, in pertinent part:

       An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.