UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID E. CLARK, | CASE NO. 4:07CV941 |
| Plaintiff, | JUDGE SARA LIOI |
| v. | Magistrate Judge George J. Limbert |
| N. JOHNSTON, et al., | **INTERIM REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendants. | |

This matter is before the Court on Plaintiff David Clark's ("Plaintiff") Motion for Summary Judgment on the Issue of Qualified Immunity (ECF Dkt. #67) and Defendant Art James' and Defendant L. Johnson's (collectively "Defendants") Motion for Summary Judgment on Qualified Immunity (ECF Dkt. #75). The Honorable Sara Lioi referred the case to the undersigned for general pretrial supervision. ECF Dkt. #8. For the following reasons, the undersigned RECOMMENDS that the Court DENY Plaintiff's motion, GRANT Defendants' motion IN PART, and DENY Defendants' motion IN PART:

**I.  PROCEDURAL HISTORY**

On March 30, 2007, Plaintiff David Clark filed a Complaint against 15 defendants alleging multiple violations of his constitutional rights. ECF Dkt. #1. On June 27, 2007, Plaintiff filed an Amended Complaint, adding 3 more defendants and modifying his legal and factual allegations. ECF Dkt. #3. On July 12, 2007, Judge Lioi dismissed several defendants and several claims from the Amended Complaint pursuant to 28 U.S.C. § 1915(e). ECF Dkt. #5. Only Plaintiff's retaliation claim against Defendants James and Johnson remain. *Id*. at 14.

On January 2, 2008, Defendants filed a motion for a protective order and a stay of discovery. ECF Dkt. #36. Defendants reasoned, in part, that they had asserted qualified immunity as a defense,

and a trial on the merits was potentially unnecessary. *Id.* at 4. On February 15, 2008, the Court granted Defendants' motion and ordered that the case would proceed on a bifurcated basis following determination of a pending interim report and recommendation. On March 12, 2008, the Court issued another order stating that the case was ready for discovery and briefing on the issue of qualified immunity. ECF Dkt. #51.

On June 3, 2008 Plaintiff filed a Motion for Summary Judgment on the Issue of Qualified Immunity ("Plaintiff's Motion"). ECF Dkt. #67. On July 14, 2008, Defendants filed a brief in opposition to Plaintiff's Motion. ECF Dkt. #74. On August 12, 2008, Plaintiff filed a reply brief. ECF Dkt. #76.

On July 14, 2008 Defendants filed a Motion for Summary Judgment on Qualified Immunity ("Defendants' Motion"). ECF Dkt. #75. On August 12, 2008, Plaintiff filed a brief in opposition to Defendants Motion. ECF Dkt. #77. On August 20, 2008, Defendants filed a reply brief. ECF Dkt #78.

## II.     STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party. *Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

## III.   LAW AND ANALYSIS

### A.   Summary of the pertinent law

#### i.   Qualified immunity

The affirmative defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether the government officials in this case are entitled to qualified immunity, the Court determine: (1) whether the facts alleged demonstrate a violation of a constitutional right, and, if so, (2) whether, objectively, a reasonable official in Defendants' position could have believed his conduct to be lawful, considering the state of the law as it existed when he took his challenged actions. *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007).

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See*, 502 F.3d at 491 (6th Cir. 2007) quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected unless the very action in question has previously been held

-3-

unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Id*.

### ii. Retaliation

To state a prima facie case for retaliation, plaintiff must establish that he engaged in protected conduct; that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). An inmate has a First Amendment right to file grievances and civil rights complaints against prison officials. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). However, to state a constitutional claim, a plaintiff must not only show he exercised this First Amendment right, but also must demonstrate that adverse actions were taken against him which were motivated, at least in part by the grievances he filed. *Thaddeus-X*, 175 F.3d at 394.

### B. Application of the law to the instant case

The undersigned will first address Defendants' motion. ECF Dkt. #75. Therefore, the evidence will first be construed in the evidence most favorable to Plaintiff.

The first step in analyzing the facts of the instant case is to identify the alleged protected conduct in which Plaintiff claims to have been engaged. In the Amended Complaint, Plaintiff contends that: (1) he was a plaintiff and testified in a federal class action case against Ohio State Penitentiary ("OSP"), styled *Austin v. Wilkinson* (ECF Dkt. # 3 at I(B), IV(1)); (2) he filed complaints and grievances against OSP staff (*Id*. at IV(1)-(2)); and (3) he was keeping legal documents in his cell pertaining to a current criminal conviction, a pending civil case before the Supreme Court, and complaints and grievances on which he was exhausting his administrative remedies (ECF Dkt. #3 at IV(3)). Plaintiff further contends that he approached Department of Rehabilitation and Correction ("DRC") legal counsel about legal property that had been confiscated. ECF Dkt. #3 at IV(4). Plaintiff contends that Defendant James interjected when Plaintiff began to complain to the chief legal counsel that Defendant James was not performing his job. ECF Dkt. #3 at IV(4). This interaction can be interpreted as an informal grievance. Lastly, Plaintiff contends that Defendants acted together in placing him in segregation based upon false conduct reports in retaliation for engaging in the aforementioned protected conduct.

In asserting that Plaintiff was not engaged in protected conduct, Defendants rely heavily on the fact that the Amended Complaint states that "The only previous lawsuit filed in any way relating to the facts herein was a small claim action for personal property not at issue here." ECF Dkt. #75 at 5 citing ECF Dkt. #3 at I(A); *see also* ECF Dkt. #5 at 9-11 (where the Court discussed Plaintiff's other lawsuits). It is unclear what exactly Plaintiff meant by that statement. However, it is clear from a further reading of the Amended Complaint that Plaintiff alleges that Defendants retaliated against him for engaging in the three instances of conduct (as enumerated above) that were independent of the Court of Claims case. *See* ECF Dkt. #3 at I(B); IV(1) ("This action involves various malicious acts of harassment and retaliation by various OSP staff acting under color of state law in a conspiracy to violate my constitutional rights . . . for my participation and testimony in federal court in a class action against OSP. . .").

The next analytical step is to determine whether this conduct is constitutionally protected. It is well established that prisoners have a constitutional right of access to the courts. *Thaddeus-X*, 175 F.3d at 391 citing *Lewis v. Casey*, 518 U.S. 343,(1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 577-80 (1974); *Johnson v. Avery*, 393 U.S. 483, 488-90 (1969); *Ex parte Hull*, 312 U.S. 546, 549 (1941); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir.1998); *John L. v. Adams*, 969 F.2d 228, 231-32 (6th Cir.1992). However, a prisoner does not enjoy a generalized "right to litigate" but a carefully-bounded right limiting access to the courts for only particularized causes of action – direct appeal, collateral attack, and § 1983 civil rights actions. *Thaddeus-X*, 175 F.3d at 392. In addition, an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996). This right is protected, however, only if the grievances are not frivolous. *Id.* citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996). Thus, an inmate's pursuit of legal claims against prison officials is protected conduct only to the extent that the underlying claims had merit. *Id.*

Here, Plaintiff's participation in the federal class action lawsuit amounts to protected conduct because that case was filed pursuant to 42 U.S.C. §1983. *See Wilkinson v. Austin*, 545 U.S. 209, 218 (2005). The undersigned turns next to the informal legal complaint that Plaintiff that he voiced to

-5-

DRC legal counsel during his tour of the OSP facility. This informal complaint does not amount to protected conduct because it is not a proper pursuit of a non-frivolous grievance. *See Herron v. Harrison*, 203 F.3d at 415. Plaintiff has not pointed the Court to any grievance policy allowing him to pursue a complaint regarding his confiscated legal property in this informal manner. Therefore, he has not established that the conduct should be protected. The remaining cases in which Plaintiff was involved do not amount to protected conduct for the reasons this Court articulated in dismissing Plaintiff's Access to Courts Claim. ECF Dkt. #5 at 9-11. More specifically, the Court noted in its July 12, 2007 order that Plaintiff failed to plead that he was pursuing an available remedy pertaining to his criminal conviction or that he was pursuing a non-frivolous legal action in court based upon the grievances he had filed. Therefore, Plaintiff's pursuit of these claims does not constitute protected conduct.

The undersigned, therefore, recommends that the Court grant Defendants' motion for summary judgment insofar as it relates to alleged acts taken in retaliation for Plaintiff's pursuit of: an informal grievance that he voiced to DRC chief legal counsel during his tour of OSP; appeals from his criminal conviction; or other grievances upon which Plaintiff was attempting to exhaust his administrative remedies. It is important to note, however, that the informal grievance with the DRC legal counsel remains relevant because the conduct report arising from that incident is potentially an act taken in retaliation for Plaintiff's participation in the federal class action suit against OSP, as discussed below. The undersigned further recommends that the Court proceed to determine whether Plaintiff sufficiently alleges that Defendants took actions in retaliation for Plaintiff's participation in a federal class action lawsuit against OSP.

Having determined that Plaintiff's participation in the federal class action suit against OSP constitutes protected conduct, the undersigned must next determine whether Plaintiff sufficiently alleges that Defendants retaliated against him for engaging in that protected conduct. Discovery on the merits of the case has not commenced because the case is bifurcated, leaving qualified immunity the sole issue before the Court at this time. Therefore, the undersigned will accept Plaintiff's claims of retaliatory acts as true for the purposes of the instant motion. That question is better left for a motion for summary judgment on the merits or for trial. *See See v. City of Elyria*,

502 F.3d at 491 (in ruling upon a motion for summary judgment on the issue of qualified immunity in a retaliation case, the district court and the Sixth Circuit looked to the *allegations* to determine whether a constitutional violation has occurred) (emphasis added).[1] The more central determination in a bifurcated case such as the one at bar is the reasonableness of the alleged conduct.  In other words, the Court should determine whether  objectively, a reasonable official in Defendants' position could have believed his conduct – in this case, a retaliatory act that would deter a person of ordinary firmness from engaging in protected conduct – to be lawful considering the state of the law as it existed when he took his challenged actions.  The questions that the jury would answer at trial would be whether, irrespective of the prison official's state of mind, the alleged retaliatory acts would in fact deter a reasonable person of ordinary firmness from engaging in protected conduct, and if those acts were at least partially motivated by the Plaintiff's engagement in protected conduct.  In other words, the Court should focus on Defendants' state of mind, or that of a reasonable official in Defendants' position, while a jury would focus on the state of mind of a reasonable person in Plaintiff's position.

Therefore, it is necessary to identify the alleged retaliatory conduct in order to proceed to determine whether a reasonable official would have believed that conduct to be lawful, but it is unnecessary to determine whether a factual basis exists to support a finding of retaliation because that issue is reserved for adjudication on the merits.

Plaintiff  contends that Defendants retaliated against him for participating in a class action lawsuit against OSP by writing three alleged false conduct reports.  The Amended Complaint alleges:

> I was a plaintiff in the class action lawsuit Austin v. Wilkinson filed by the A.C.L.U. in the U.S. District Court for the Northern District of Ohio before Judge James S. Gwinn [sic].  The class plaintiffs won.

---

[1] It is important to note that, Defendants acknowledge that identification of a constitutional violation is relevant (*see* ECF Dkt. #75 at 3 "First the analysis examines whether a constitutionally protected right has been violated"), but they also contend that under the Court's March 12, 2008 order, the merits of the action are not yet at issue.  ECF Dkt. #74 at 2.

-7-

> \* \* \*
>
> **This action involves various malicious acts of harassment and retaliation by various OSP staff acting under color of state law in a conspiracy to violate my constitutional rights . . . for my participation and testimony in federal court in a class action against OSP**. . .
>
> \* \* \*
>
> The defendants applied their legal & 2.4 property policy to me in order not to allow me to keep my legal property in my cell, then my records and research relating to . . . my civil case that was still pending before the Supreme Court.
>
> \* \* \*
>
> On or about May 12th, 2005, during a tour of Dept. of Rehabilitation & Correction (DRC) officials I was speaking to the chief legal counsel for the Dept about my confiscated legal property when UMA (Unit Management Administrator) interjected himself in the conversation, he didn't like my complaints about his job performance, so he had me put in the hole for no reason, came to the hole and told me he was going to keep me there for a long time by putting me in 4B (ad. seg.) and then send me to S.O.C.F. (another inst.). To justify the seg. placement Mr. James (UMA) wrote a false ticket for 'Disrespect' in retaliation, violating my <u>1st amendment rights</u>.
>
> \* \* \*
>
> Mr. James couldn't recommend [sic] 4B on his own tickett [sic], so he had U/M Johnson write another false conduct report on me before I was released from seg. for an alleged incident that happend [sic] weeks earlier, another violation of my <u>1st amendment rights</u>.
>
> \* \* \*
>
> Apparently that wasn't enough to put me in 4B either because I was released from seg. So then Mr. James and U/M Johnson had another inmate entrap me for a 3-way phone call for which they put me in the hole again, this time for misuse of the telephone, even though there was no rule making a 3-way call, and as long as no criminal activity was involved it's not something inmates are put in the hole for. I was not only put in the hole, I was also kept in administrative segregation for approx. 300 days! This violated my <u>1st amend. right</u> because it was done in retaliation . . .

ECF Dkt. #3 at 1-4 (emphasis added). Construing the Amended Complaint in the light most favorable to Plaintiff, it appears that Plaintiff alleges that Defendants retaliated against him for participating in a class action suit against OSP by writing false conduct reports that resulted in him being placed in segregation. Therefore, the undersigned recommends that the Court find that Plaintiff has satisfied the first prong of the qualified immunity test by showing that a constitutional violation has occurred with respect to his participation in a class action suit against OSP.

Lastly, it is necessary to determine whether an evidentiary basis exists to demonstrate that Defendants' alleged acts are such that, objectively, a reasonable official in Defendants' position could have believed his conduct to be lawful, considering the state of the law as it existed when he took his challenged actions.

Here, Plaintiff presents some significant, probative evidence indicating the necessity of a hearing for resolving a material, factual dispute, namely his own sworn statement, admissions to which the Defendants failed to furnish a timely response, and conduct reports.

Plaintiff contends that Defendants failed to furnish timely responses to his requests for admissions. ECF Dkt. #67 at 6. Defendants challenge Plaintiff's reliance on admissions. ECF Dkt. #74 at 2. Defendants contend that Plaintiff's requests for admissions do not pertain to qualified immunity; therefore, Defendants contend that they were not obligated to respond to the requests within 30 days. *Id.* Defendants argument lacks merit because, even assuming the requests for admissions do not pertain to the issue of qualified immunity, Defendants were obligated to respond with objections. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or **objection** addressed to the matter and signed by the party or its attorney. ") (emphasis added). Here, the Court issued an order on March 12, 2008 stating that the case was ready for discovery on the issue of qualified immunity. ECF Dkt. #51. Shortly thereafter, on March 18, 2008, Plaintiff served Defendants with requests for admissions. ECF Dkt. #67, Ex. H, I. On May 7, 2008, the date of the discovery deadline, Defendants furnished responses to those requests. *Id*.; ECF Dkt. #51. Since Defendants failed to respond or assert an objection within 30 days, Plaintiffs requests for admissions are deemed to be admitted pursuant to Federal Rule of Civil Procedure 36(a)(3), regardless of whether they are relevant to the issue of qualified immunity.

Neither Rule 36 nor the Court's March 12, 2008 order permit Defendants to unilaterally deem a discovery request to be irrelevant and simply ignore the request without stating objections. Should there be an issue over the appropriateness of a discovery request, it is the Court's, not defense counsel's, province to determine the issue. Rather than not addressing the discovery request at all, Defense counsel should have stated an objection under the March 12, 2008 order and

-9-

preserved the issue with the Court. Perhaps a failure to raise an objection would have been acceptable with respect to a discovery request that was pending when the Court issued its March 12, 2008 order, but that is not the case here. Plaintiff filed his requests for admissions following the Court's March 12, 2008 order bifurcating the case. Therefore, it is clear that Plaintiff believed the requests were relevant to the issue of qualified immunity. Further, on April 27, 2008, Plaintiff sent a letter to defense counsel in an effort to obtain a response. ECF Dkt. #67, Ex. G. Apparently, that letter went unanswered. Despite having ample opportunity to claim that the requests were irrelevant, Defendants raised no objections. In fact, Defendants sent responses to the requests on the last day of discovery, well beyond the 30-day time period. Yet Defendants now claim the requests are irrelevant. The undersigned fails to see why Defendants would go to the effort of securing a stay of discovery, only to voluntarily respond to discovery requests that they believe to be irrelevant on the issue of qualified immunity. Therefore, Defendants' failure to respond to Plaintiff's requests within 30 days deems those admissions to be admitted pursuant to Federal Rule of Civil Procedure 36.

Rule 36(b) provides that a court, **on motion**, may grant relief from admissions that have been deemed to be admitted if the withdrawal of the admissions would promote the presentation of the merits without prejudicing the nonmoving party. *See* Fed. R. Civ. P. 36(b) (emphasis added). Defendants, however, have not filed such a motion. Consequently, Plaintiff's requests for admissions are deemed to be conclusively established.

Defendants also argue that Plaintiff relies upon hearsay evidence in opposing Defendants' motion for summary judgment. ECF Dkt. #74 at 2.[2] Again, Defendants' argument is not compelling because Defendant James **explicitly** admitted that the conduct reports for a May 12, 2005 offense and a June 2, 2005 offense were accurate copies of those records. *See* ECF Dkt. #67, Ex. H at 4-5; ECF Dkt. #67, Ex. E, Attach. 1,2. Further, Defendant Johnson **explicitly** admitted that the conduct report for May 5, 2005 was an accurate copy of that record. *See* ECF Dkt. #67, Ex. I at 2; ECF Dkt.

---

[2] Of note, both Plaintiff and Defendants incorporate their initial merits briefs (ECF Dkt. #67, 75) in their oppositional briefs (ECF Dkt. #74, 77).

#67, Ex. D, Attach. 1. Accordingly, Defendants have no basis for challenging the authenticity of those documents.

Therefore, the body of evidence available for ruling upon the instant motion for summary judgment includes Plaintiff's Declaration, his requests for admissions, which are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3), and the conduct reports from May 5, 2005, May 12, 2005, and June 2, 2005, which Defendants explicitly admit are authentic.

Considering this evidence, the undersigned believes that Defendant James is not entitled to qualified immunity because genuine issues of material fact exist as to his motive for writing the May 12, 2005 conduct report. Defendant James contends that "*A prison official acted to prevent an inmate from interfering with the planned business of the prison system's chief legal counsel*, which is entirely proper, as inmates have no constitutional right to tell officials how to run the prison." ECF Dkt. #78 at 3 (emphasis added). Defendant James, however, offers no evidence in support of the factual portion of that allegation, which is italicized above. In fact, the conduct report indicates disrespect to a staff member because, as Defendant James wrote, "During our tour the [Plaintiff] became very disrespectful with me. . ." ECF Dkt. #67, Ex. E, Attach. 1. Therefore, Defendant James' alleged basis for his actions in his brief differ from what he alleged in the conduct report. Although the allegations are not necessarily inconsistent, they do raise an issue of fact as to the true motive for Defendant James' actions.

In addition, Plaintiff points to his own sworn declaration and Defendant James' admissions to establish that Plaintiff never used the word "liar" or any profanity during the incident, despite the fact that the May 12, 2005 conduct report indicates otherwise. Therefore, based on Defendant James' admissions, the May 12, 2005 conduct report contains false statements. *Compare* ECF Dkt. #67, Ex. H ¶¶ 19-20 *with* ECF Dkt. #67, Ex. E., Attach. 1. Further, it is fair to infer from the false nature of the report that he filed the complaint with a retaliatory intent. Therefore, the false conduct report raises a genuine issue of material fact as to whether Defendant James knew that he was violating Plaintiff's constitutional rights by drafting the document.

Although Defendant James contends that Plaintiff does not have a constitutional right to be free from false conduct reports, the authority he relies upon is not compelling. *See* ECF Dkt. #75

-11-

at 4. Defendant James cites *Thaddeus-X* in support of his argument, however, the court in *Thaddeus-X* stated that "retaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeuus-X*, 175 F.3d at 394. Therefore, whether Plaintiff has a stand-alone constitutional right to be free from false conduct reports is immaterial; the question is whether such a false report would have a chilling effect on the litigation in which Plaintiff was involved. And that question is reserved for adjudication on the merits. Defendant James also relies on *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) for the proposition that "an inmate has no constitutional guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest." ECF Dkt. #75 at 4. Even accepting that proposition of law, arguendo, the undersigned believes that it is unreasonable to blindly apply that rule and allow a corrections officer to write a false complaint in retaliation for a prisoner's exercise of a First Amendment right to access the courts.

Accordingly, the undersigned recommends that the Court Deny Defendants' motion insofar as it relates to Defendant James and the May 12, 2005 conduct report.

Plaintiff next contends that Defendant Johnson served him with a second false conduct report involving his alleged possession of CD's. ECF Dkt. #67 at 4-6. Here again, the conduct report[3] (ECF Dkt. #67, Ex. D, Attach. 1) read in conjunction with Defendant Johnson's admissions (ECF Dkt. #67, Ex. I ¶¶ 6-8) shows that the conduct report is false. Therefore, as above, a genuine issue of material fact exists as to Defendant Johnson's motive. In addition, based upon Defendant James' admission (ECF Dkt. #67, Ex. H ¶ 21), evidence exists to establish that Defendant James instructed Defendant Johnson to cite Plaintiff for "whatever possible." This evidence establishes a potential basis for finding that Defendant Johnson's false conduct report was based upon a retaliatory intent.

Therefore, the undersigned recommends that the Court deny Defendants' motion insofar as it relates to Defendant James and the May 5, 2005 conduct report.

---

[3] Although the signature is illegible on the conduct report for May 5, 2005, Defendant Johnson admitted that he wrote the report. ECF Dkt. #67, Ex. I, ¶9.

Lastly, Plaintiff alleges that both Defendants entrapped him with a three-way telephone call and issued a conduct report for misuse of a telephone. ECF Dkt. #3 at 4. Qualified immunity clearly does not apply to this conduct report because Defendant James has admitted that he recruited another inmate to entrap Plaintiff into a disciplinary violation. ECF Dkt. #67 , Ex. H, ¶ 22. Again, it is fair to conclude that the conduct report stemming from this incident was not entirely true based upon the entrapment. Therefore, a potential inference exists that the report was authored with retaliatory intent. However, there is no evidence, besides Plaintiff's self-serving affidavit, indicating that Defendant Johnson had any involvement in June 2, 2005 conduct report. Plaintiff's affidavit alone does not raise a genuine issue of material fact because "[s]everal courts have declared that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Bickley v. FMC Technologies, Inc.*, 282 F.Supp.2d 631, n.2 (N.D.Ohio, 2003) (internal quotations omitted).

Therefore, the undersigned recommends that the Court deny Defendants' motion insofar as it relates to Defendant James and the June 2, 2005 conduct report, but grant the motion insofar as it relates to Defendant Johnson and the June 2, 2005 conduct report.

### C. Plaintiff's motion for summary judgment

In light of the foregoing analysis, the undersigned recommends that the Court deny Plaintiff's motion as moot.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court :

    i.    GRANT Defendants' Motion for Summary Judgment on Qualified Immunity (ECF Dkt. #75) insofar as it relates to alleged acts taken in retaliation for Plaintiff's pursuit of: an informal grievance that he voiced to DRC chief legal counsel during his tour of OSP; appeals from his criminal conviction; or other grievances upon which Plaintiff was attempting to exhaust his administrative remedies;

    ii.    GRANT Defendants' Motion for Summary Judgment on Qualified Immunity (ECF Dkt. #75) insofar as it relates to his participation in a federal class action suit against OSP, *Wilkinson v. Austin*, 545 U.S. 209, 218 (2005),and Defendant Johnson's alleged participation in a false conduct report dated June 2, 2005;

    iii.    DENY Defendants' Motion for Summary Judgment on Qualified Immunity (ECF Dkt. #75) insofar as it relates to his participation in a

        federal class action suit against OSP, *Wilkinson v. Austin*, 545 U.S. 209, 218 (2005),and Defendant James' alleged participation in a false conduct report dated May 12, 2005; Defendant Johnson's alleged participation in a false conduct report dated May 5, 2005; and Defendant James alleged participation in a false conduct report dated June 2, 2005;

    iv.    DENY as moot Plaintiff's Motion for Summary Judgment on the Issue of Qualified Immunity (ECF Dkt. #67).

DATE: September 12, 2008                             */s/George J. Limbert*
                                                                             GEORGE J. LIMBERT
                                                                     UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).