# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID E. CLARK, | ) | CASE NO. 4:07 CV 941 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| N. JOHNSTON, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| DEFENDANTS. | ) | |
| | ) | |

This matter is before the Court on an Interim Report and Recommendation ("R&R") (Doc. No. 79) relating to the parties' cross-motions for summary judgment on the issue of qualified immunity. Both plaintiff and defendants filed objections to the R&R (Doc. Nos. 80 and 81, respectively) and defendants also filed a response to plaintiff's objections (Doc. No. 83).

Under Fed.R.Civ.P. 72(b)(3), the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." The court may "accept, reject, or modify the recommended disposition[.]"

Here, the R&R recommends that plaintiff's motion for summary judgment (Doc. No. 67) be denied as moot and that defendants' motion for summary judgment (Doc No. 75) be granted in part and denied in part. If the R&R were to be accepted, defendants' motion for summary judgment on the issue of qualified immunity would be denied only insofar as it relates to plaintiff's alleged claim of retaliation for his participation in a now-closed federal class action lawsuit.[1] In particular, the R&R would preserve as questions of fact for the jury whether three

---

[1] *See Austin, et al. v. Wilkinson, et al.*, Case No. 4:01CV71 (Gwin, J.).

allegedly false conduct reports dated May 5, 2005, May 12, 2005 and June 2, 2005 were in any way motivated by retaliation for plaintiff's having participated in that lawsuit.

The R&R deems certain facts admitted by the defendants due to their failure to respond to requests for admission and, on that basis, resolves at least part of defendants' motion for summary judgment in plaintiff's favor.[2]

For the reasons discussed herein, the Court **ACCEPTS THE R&R IN PART AND REJECTS IT IN PART**.

## I. DISCUSSION

**A. Background**

Plaintiff, acting *pro se*, commenced this action on March 30, 2007, and amended his complaint on June 27, 2007, before any defendant had been served. (Doc. Nos. 1, 3.) In his amended complaint, plaintiff named sixteen individual defendants, plus a "John Doe." In a section of the amended complaint styled "IV. Statement of Claim," plaintiff set forth his factual allegations. He first stated:

> 1.  This action involves various malicious acts of harassment and retaliation by various OSP [Ohio State Penitentiary] staff acting under color of state law in a conspiracy to violate my constitutional rights both for my participation and testimony in federal court in a class action against OSP, and for my complaints against some of them individually.
>    All defendants are being sued in both thier [sic] individual and official capacities.

Amended Complaint (hereafter "complaint"), ¶ 1. The complaint goes on to outline alleged constitutional deprivations of property, denial of right of access to the courts, equal protection violations, and retaliation for filing complaints and grievances.

---

[2] After the Magistrate Judge issued his R&R, defendants moved for leave to withdraw and amend their responses to plaintiff's requests for admissions. (Doc. No. 82.) Plaintiff opposed this motion. (Doc. No. 86.) Since the R&R deems certain facts admitted, the Court will need to resolve Doc. No. 82 as a threshold matter in this opinion.

In a Memorandum Opinion and Order dated July 12, 2007, this Court significantly narrowed plaintiff's complaint, dismissing all but two defendants (Johnson and James) and all but one claim against those two defendants (retaliation). The Court stated: "This action will proceed solely against Ms. L. Johnson and Mr. Art James on Mr. Clark's retaliation claim." (Doc. No. 5, at 14.)

In the Memorandum Opinion and Order, the Court was very clear as to the scope of the retaliation claim in the complaint:

> Finally, Mr. Clark contends that he was the subject of retaliation. The amended complaint contains two retaliation claims. The first of these claims pertains to his personal property dispute. The other claim pertains to his placement in segregation for speaking with the ODRC Legal Counsel. To state a prima facie case for retaliation, plaintiff must establish that he engaged in protected conduct; that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).
>
> * * *
>
> Mr. Clark also asserts that Unit Manager Administrator Art James and Unit Manager Johnson retaliated against him for exercising his First Amendment rights. He claims Mr. James put him [in] segregation for speaking to an ODRC official about his property dispute, and conspired with Ms. Johnson to keep him in administrative segregation in retaliation for complaining about Mr. James to the ODRC official. These retaliation claims meet the basic pleading requirements of Federal Civil Procedure Rule 8 and are not subject to dismissal under 28 U.S.C. § 1915(e).

(Doc. No. 5, at 12, 13.)

On July 24, 2008, plaintiff filed a motion to alter or amend the judgment. (Doc. No. 6.) In this motion, he challenged the Court's various rulings and, in particular, the rulings relating to the sole remaining retaliation claim. His entire argument in this regard was as follows:

> I could have done a better job of pointing out that I had filed specific grievances on Sgt. Johnston for harassing and retaliating against me and showing

> it was personal because she was directing C/O Lyons in what to take when Sgt.'s [sic] usually aren't involved with seg. pack-ups and Lyon's [sic] went along with it. But it is also unconstitutional for her to retaliate against me just because she doesn't like that I complain about things in general, and that is definately [sic] true.

(Doc. No. 6, at 6.) Plaintiff made no mention of the Court's characterization of the retaliation claim as involving only two aspects: his personal property dispute and his placement in segregation for speaking to ODRC Legal Counsel. He did not argue that his complaint is broader than that and/or that it also includes allegations that he has been retaliated against because of his participation in the former class action lawsuit.

**B. Discussion and *De Novo* Review**

**1. Defendants Motion for Leave to Withdraw and Amend Responses to Requests for Admissions (Doc. No. 82)**

On or about March 18, 2008, a few days after the Court had opened discovery solely on the issue of qualified immunity, plaintiff served requests for admission upon defendants Johnson and James. (*See* Doc. No. 67-2, at 14-21.) There was no obligation to respond to this discovery unless it related to qualified immunity, in which case responses would have been due on or about April 20, 2008.[3] Prior defense counsel served responses on May 7, 2008, the discovery cut-off date.[4] In the R&R, the Magistrate Judge has deemed all of the requests admitted because, in his view, the responses were untimely and defendants had, at the very least, an obligation to timely respond with objections if they believed the discovery was beyond the scope of qualified immunity.

---

[3] Under Fed.R.Civ.P. 36(a), a party's failure to respond within thirty (30) days means that the request for admission are deemed admitted by default.

[4] Current defense counsel made his appearance on May 30, 2008.

Analysis of the R&R is now somewhat complicated by the fact that, after the R&R was filed, defendants filed a motion for leave to withdraw and amend the responses to plaintiff's requests for admission. (Doc. No. 82.) They argue that the requests went beyond the permissible scope of discovery on qualified immunity. They seek leave to withdraw the May 7th responses or, in the alternative, for an order that, even if the deemed admissions are not withdrawn, they are not relevant to the issue of qualified immunity and, therefore, have no bearing on the analysis for the motions for summary judgment.

Under Fed.R.Civ.P. 36(b), "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Further, "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining [. . .] the action on the merits."

The Court has "considerable discretion" in deciding whether to permit withdrawal or amendment of admissions. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997). In this case, the Court has reviewed the various requests for admissions and sees no connection to the issue of qualified immunity. These requests go to the merits of the underlying claims, matters which are not yet before the Court. Although, strictly speaking, defendants probably should have responded by making timely objections, the fact is, these discovery requests should not have even been made because discovery was stayed as to the merits. To allow the admissions to stand would effectively eliminate the defendants' ability to defend on the merits, should the case proceed that far.

In addition, there will be no prejudice to the plaintiff of the kind that Rule 36 requires. As explained in *Kerry Steel*:

> "[t]he prejudice contemplated by [Rule 36(b)] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth." *Brook Village North Assoc. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982). Prejudice under Rule 36(b), rather, "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *American Auto. [Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*], 930 F.2d [1117 (5th Cir. 1991)] at 1120.

106 F.3d at 154. Plaintiff has neither argued nor shown this kind of prejudice.

The Court, in its discretion, will permit defendants to withdraw the admissions.

Accordingly, Doc. No. 82 is **GRANTED**.

### 2. *De Novo* Review of the Objections

The Magistrate Judge made the following recommendations in the R&R:

1. GRANT IN PART AND DENY IN PART defendants' motion for summary judgment on qualified immunity (Doc. No. 75), as follows:

    a. GRANT insofar as it relates to alleged acts taken in retaliation for plaintiff's pursuit of (1) an informal grievance that he voiced to ODRC Legal Counsel during a tour of OSP, (2) appeals from his criminal conviction, and (3) other grievances upon which plaintiff was attempting to exhaust his administrative remedies;

    b. GRANT insofar as it relates to plaintiff's participation in a federal class action suit against OSP and defendant Johnson's alleged participation in a false conduct report dated June 2, 2005.

    c. DENY insofar as it relates to plaintiff's participation in a federal class action suit against OSP and defendant James's alleged participation in false conduct reports dated May 12, 2005 and June 2, 2005 and defendant Johnson's alleged participation in a false conduct report dated May 5, 2005.

2. DENY as moot plaintiff's motion for summary judgment on the issue of qualified immunity (Doc. No. 67).

Defendants object to the recommendation that their motion be denied with respect to any claim of false conduct reports in retaliation for plaintiff's participation in the federal class

action lawsuit. They point to this Court's Memorandum Opinion and Order of July 12, 2007 as authority for their primary argument that plaintiff has simply never alleged any linkage between these false conduct reports and his litigation involvement nor, for that matter, that the two remaining defendants even knew that he had participated in the federal class action lawsuit. They assert that the Magistrate Judge unfairly and improperly added a judicial gloss to plaintiff's complaint.

Plaintiff objects to the recommendations for granting portions of the defendants' motion and to the recommendation that his own motion be denied as moot.[5] He asserts that the R&R does not afford his complaint the liberal treatment to which he is entitled as a *pro se* litigant and that it fails to recognize some of the complaint's factual allegations. Plaintiff attacks some of the Magistrate Judge's factual statements and attempts in his objections to buttress the factual allegations of his complaint. He also challenges the R&R's legal conclusions regarding the first element of the qualified immunity analysis, namely, whether he was engaged in protected activity when he verbally complained to the ODRC Legal Counsel about having been deprived of his personal property and legal documents.

The Court has conducted a *de novo* review of the matters objected to and, for the most part, finds no error in the R&R. The exception relates to the recommendation 1(c) regarding the retaliation claim. This recommendation requires further discussion.

As a threshold matter, the Court expressly notes that it accepts the R&R's recommendation 1(a) relating to claims of retaliation for pursuing informal grievances, appeals from plaintiff's criminal conviction, and other grievances still unexhausted through the

---

[5] Plaintiff argues that his motion, filed long before the defendants' motion, deserves to be given complete consideration on the merits, not just denied as moot. This is a meritless argument. In fact, plaintiff's motion should simply have been denied outright because the same issues it raises were decided on defendants' motion. There is no need to re-decide them.

administrative process for the same reasons given by the Magistrate Judge. *See* R&R, at 6 (concluding that pursuing a verbal, informal complaint is not protected conduct and that there are no allegations in the complaint that plaintiff was actually attempting to appeal his criminal conviction or any non-frivolous legal action based on grievances filed). The Court's particular review here goes to recommendation 1(c), which, as defendants have correctly argued, adds a judicial gloss to the retaliation portions of plaintiff's complaint.

This Court has already previously construed the complaint as alleging a two-pronged retaliation claim: pertaining to plaintiff's personal property dispute and pertaining to his placement in segregation. *See* Doc. No. 5, at 12. Plaintiff has never challenged this conclusion, including when he filed his immediate motion to alter or amend Doc. No. 5. He has never asked this Court to modify Doc. No. 5 to indicate that he is alleging retaliation due to his participation in the federal class action lawsuit.

In an abundance of caution, however, the Court has again very carefully scrutinized the allegations of the complaint in light of the R&R and again concludes that, although the complaint makes mention of the fact that plaintiff was a party to the federal class action lawsuit, it never alleges that Johnson and James, the only remaining defendants, had any knowledge of his participation in that litigation *and*, more importantly, the complaint never alleges any nexus between the defendants' adverse behavior (i.e., the alleged false conduct reports) and his participation in prior litigation. Plainly put, the complaint does not allege that the three allegedly false conduct reports were motivated by retaliation for plaintiff's participation in the now-closed federal class action lawsuit.

Plaintiff's complaint is very clear. With respect to the alleged false conduct report of May 12, 2005 (written by defendant James for "disrespect"), plaintiff states that it was

8

motivated by the fact that plaintiff complained to an ODRC official "about his [James's] job performance, so he had me put in the hole for no reason, came to the hole and told me he was going to keep me there for a long time by putting me in 4B (ad. seg.) and then send me to S.O.C.F. (another inst.) To justify the seg. placement, Mr. James (UMA) wrote a false tickett [sic] for 'Disrespect,' in retaliation, violating my 1st amendment rights." (Compl. ¶ IV, 4.) Plaintiff's declaration, filed in support of his motion for summary judgment, reiterates these same factual allegations even adding that, when plaintiff told the ODRC official that defendant James was not doing his job, James ordered plaintiff to return to his cell. While plaintiff was waiting for his cell door to be opened, he "responded to another inmate's question as to why he was being locked up by saying: 'because people are upset because I'm telling thier [sic] supervisors that they're not doing they're [sic] jobs,' in an attempt to make sure the other officials there were aware of James acting in an oppressive manner, abusing his authority." (Doc. No. 67-2, at 3, ¶ 8; *see also* ¶¶ 7, 9-12.)[6]

Similarly, with respect to the May 5, 2005 allegedly false conduct report, plaintiff's declaration[7] states as follows:

> 13. On or about May 19, 2005, before plaintiff was released from seg. for James' false disrespect charge, Sgt. Johnston (defendant N. Johnston) came to hear a false conduct report on plaintiff for "disobedience of direct order" written by defendant Johnson.

---

[6] The Magistrate Judge found inconsistencies between the conduct report and the reply brief of the defendants in support of their summary judgment motion which he concluded created a material factual dispute. In addition, the R&R concludes that the defendants "admitted" (by virtue of failing to oppose the discovery requests discussed above) that the conduct report was false. (*See* R&R, at 11.) It *may be* that there is a factual dispute, but it is certainly *not* material, given that plaintiff's own documents fail to establish *any* nexus between the prior federal class action lawsuit and the allegedly false conduct report of May 12, 2005.

[7] The complaint itself is not particularly clear about this conduct report, alleging only that "Mr. James couldn't recomend [sic] 4B on his own tickett [sic], so he had U/M Johnson write another false conduct report on me before I was released from seg. for an alleged incident that happened weeks earlier, another violation of my 1st amendment rights." (Compl. ¶ IV, 5.)

14. This ticket wasn't written until May 9, 2005 even though this incident in question was listed as having taken place on the 5th of May. Conduct reports are required to be written at the time the staff person is aware that a rule violation has occured [sic]. And conduct reports are required to be heard by the hearing officer within 7 business days of being written.

15. The issue in question, or incident, was one where Sgt. Johnston had refused to give plaintiff some CD's [sic] that had been sent to him, even though it was made clear by the Inst. Inspector that she had a duty to do so. So defendant Johnson, a Unit Manager, brought them to plaintiff, though passing out property was outside of a Unit Manager's job description and very unusual. Instead of bringing the CD's [sic] to plaintiff's pod as would normally be done, defendant [sic] was called out to the barbershop (a small isolated room where he was alone with defendant Johnson who closed the door behind them so there could be no witnesses.) While giving plaintiff his CD's [sic] defendant Johnson was attempting to be slick and question plaintiff about CD's [sic] he had received in the past but no longer posessed [sic]. Plaintiff explained that he had sent them to family and friends. Johnson next asked plaintiff about some Spanish language CD's [sic] he no longer had. Plaintiff vaguely stated that he was "sharing" them with his sister. Johnson lied in the conduct report and quoted plaintiff as having said "friends in the Block" instead of sister. Even though she had Lt. Adams search my entire pod and a couple cells in other pods the night before. And she had been the one to send these CD's [sic] out to my sister just prior to this.

(Doc. No. 67-2, at 4-6.)

Clearly, there is no connection between these allegations and any claim of retaliation for having participated in a federal class action lawsuit.[8] If anything, this allegedly false conduct report is alleged to have been motivated by plaintiff's verbal complaints about defendant James to the ORDC official on May 12, 2005. It seems that plaintiff is alleging that defendant James wanted to be sure plaintiff ended up in segregation and was allegedly trying to

---

[8] Again the Magistrate Judge concluded that there was a genuine issue of material fact as to defendant Johnson's motive for issuing this conduct report, especially relying on the "admissions." He determined that there was a "potential basis for finding that Defendant Johnson's false conduct report was based upon a retaliatory intent." (R&R, at 12.) Just because Johnson may have been acting with a retaliatory intent does not mean the actions were in retaliation *for* participation in the class action. There is simply *no* nexus alleged between any such intent and the federal class action lawsuit.

come up with any excuse to make that happen, including going back over old behavior and having someone else write a new conduct report. The problem with this as a retaliation claim is that there was no grievance filed. As pointed out by the Magistrate Judge with respect to his recommendation 1(a), an informal complaint does not amount to protected conduct because it is not the proper pursuit of a non-frivolous grievance. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Finally, the R&R's conclusion as to the allegedly false June 2, 2005 conduct report, suffers from the same fatal defect as the other two conduct reports. There is nothing in the complaint or the plaintiff's motion for summary judgment to supply a link between the conduct report for misuse of the telephone and retaliation for participating in a class action lawsuit. Once one sets aside the alleged "admission" by defendant James that he recruited another inmate to entrap plaintiff in a disciplinary violation, which the Court has done by its ruling relative to Doc. No. 82, there is nothing left. Even if that admission were not set aside and even if there were an outright admission that James entrapped plaintiff into a disciplinary violation, there is nothing to establish that it was done in retaliation for participating in a class action lawsuit.

### III. CONCLUSION

In light of the Court's Memorandum Opinion and Order of July 12, 2007 (Doc. No. 5), plaintiff's motion to alter or amend the judgment (Doc. No. 6), and the discussion above carefully re-examining the allegations of the complaint in light of the current cross-motions for summary judgment on the issue of qualified immunity and the Magistrate Judge's R&R, the Court concludes that the defendants are entitled to summary judgment on the question of qualified immunity and, therefore, their entire motion for summary judgment should be granted. Further, for the same reasons, plaintiff's motion for summary judgment should be denied.

Accordingly, pursuant to Fed.R.Civ.P. 72(b)(3), having conducted a *de novo* review of the objections to the Interim Report and Recommendation (Doc. No. 79), the Court **ACCEPTS** recommendations 1(a), 1(b) and 2, but **REJECTS** recommendation 1(c). Therefore, the Court **GRANTS** defendants' motion for summary judgment on the issue of qualified immunity (Doc. No. 75) and **DENIES** plaintiff's motion for summary judgment on the issue of qualified immunity (Doc. No. 67). In addition, the Court **GRANTS** Doc. No. 82, defendants' motion to withdraw responses to requests for admission.

**IT IS SO ORDERED**.

Dated: December 16, 2008

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**