# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID E. CLARK,** | ) | **CASE NO. 4:07 CV 941** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | **Magistrate Judge George J. Limbert** |
| **v.** | ) | |
| | ) | |
| **N. JOHNSTON, et al.,** | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the motion for summary judgment filed on behalf of Defendants, various employees[1] of the Ohio State Penitentiary ("OSP")[2], on June 1, 2012. ECF Dkt. #161. Plaintiff, who is acting *pro se* and is currently incarcerated at Toledo Correctional Institution, was incarcerated at OSP at all time relevant to the Second Amended Complaint.

---

[1]The named defendants are  N. Johnston (herein "Sgt. N. Johnston," or "Sgt. Johnston"), Arthur James (herein "Art James" or "Mr. James"), L. Johnson (herein "L. Johnson," "U/M Johnson," or "Laura Johnson"), Tracy England (herein "Mrs. England"), Ted Jackson (herein "Lt. Jackson"), Mr. Carter, Unknown Lyons (herein "C/O Lyons"), Mrs. Darnell Brady (herein "Ms. Brady"), Unknown Wylie, Mrs. Diana Carter, Mr. Shabazz (herein "Sgt. Shabazz"), Mr. Williams, Mr. Unknown Williams (herein "Capt. Williams"), Mrs. Linda Gabauer (herein "Mrs. Gabauer"), Mr. J. Remmick (herein "Mr. Remmick" and "Jeff Remmick"), Mr. Unknown Bright (herein "Lt. Bright), Mr. Unknown Salata, and John Doe Mail Room Officer.

[2]OSP is a supermaximum, or "Supermax" facility.

The briefing schedule for the motion for summary judgment was extended over the course of several months because Plaintiff's objections to a discovery order entered by the undersigned were pending before the Court when the summary judgment motion was filed.  ECF Dkt. #158.  In an Order dated November 8, 2012, the Court overruled Plaintiff's objections to the discovery order and set a briefing schedule for the pending motion for summary judgment.  ECF Dkt. #169 and 170. Pursuant to the Court's Order, Plaintiff filed his opposition brief[3] on December 27, 2012.[4] ECF Dkt. # 172.  Defendants filed their reply brief on January 3, 2013. ECF Dkt. #173.

I.      PROCEDURAL HISTORY

On March 30, 2007, Plaintiff filed a complaint against eighteen OSP employees alleging violations of his civil rights pursuant to 42 U.S.C. §1983.  On June 27, 2007, Plaintiff amended his complaint, specifically alleging violations of his First, Sixth, Eighth, and Fourteenth Amendment rights.  Plaintiff asserted that Defendants confiscated his personal and legal property in violation of established prison policy, threatened him physically, denied him access to the courts through the deprivation of his legal property, placed him in segregation based upon false conduct reports, and entrapped him into making a forbidden three-way telephone call and subsequently punished him for the call.  He argued that the foregoing actions were retaliatory and undertaken in response to his

---

[3]In his opposition brief, Plaintiff contends that he suffers from ADHD and is "easily overwhelmed and confused by factually intense and complicated subjects."  ECF Dkt. #172 at p. 1.  Plaintiff further contends that his ADHD, coupled with inadequate legal materials and amount of time that he has had access to them has made it impossible to "put together a sufficiently coherent response in a proper legal format" in the time allowed by the Court.  *Id.*  Instead, Plaintiff employs a narrative form of the facts in his response. In the event that his response is not acceptable to the Court, Plaintiff seeks an additional thirty days to reformulate his brief.  Insofar as the motion for summary judgment has been pending for over six months, the undersigned recommends that the Court find that Plaintiff has had sufficient time to formulate his opposition brief and, therefore, accept the opposition brief in its current format.

[4]According to the certificate of service, Plaintiff mailed the opposition brief on December 18, 2012.

2

participation in a class action lawsuit against OSP, his complaints to the general counsel of the Ohio Department of Rehabilitation and Corrections ("ODRC"), and his various complaints and grievances against prison officials.

On July 12, 2007, the Court dismissed virtually all of Plaintiff's claims *sua sponte* pursuant to 28 U.S.C. 1915(e), with the exception of his First Amendment claim against Defendants, Art James and L. Johnson ("July 12th Memorandum Opinion and Order"). ECF Dkt. #5.[5] According to the amended complaint, Art James and L. Johnson retaliated against Plaintiff for his complaints to the ODRC general counsel by submitting false conduct reports, which resulted in Plaintiff's placement in segregation.

Discovery on the remaining claim proceeded, and, on June 3, 2008, Plaintiff moved for summary judgment on the issue of qualified immunity.  ECF Dkt. #67. On July 14, 2008, the remaining defendants filed a motion for summary judgment asserting a defense of qualified immunity and arguing that Plaintiff failed to state a violation of his constitutional rights.  ECF Dkt. #75.  On December 16, 2008, the Court granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment.  ECF Dkt. #87 and 88.

On February 22, 2011, the Sixth Circuit affirmed the dismissal of virtually all of Plaintiff's claims, with the exception of his retaliation claim "based on his participation in a class action lawsuit and filing of other complaints and grievances (and allegedly leading to the confiscation of his personal and legal property)."  *Clark v. Johnston*, 413 Fed.Appx. 804, 819 (6th Cir.2011, unreported).  The retaliation claim, which was dismissed by this Court pursuant to the July 12th

---

[5]On July 24, 2007, Plaintiff filed a motion to alter or amend judgment, with respect to the July 12th Memorandum Opinion and Order. ECF Dkt. #6.  The Court ultimately concluded that Plaintiff "ha[d] failed to show actual injury as a result of the conduct of any of the defendants." ECF Dkt. #50.

Memorandum Opinion and Order, was remanded for further proceedings. *Id.* On that same day, the

above-captioned case was referred to the undersigned for pretrial supervision. ECF Dkt. #104.

> The Sixth Circuit described the remanded claim as follows:
>
> It cannot be said that Clark has failed to state any claim for retaliation upon which relief may be granted, especially when considering the less stringent pleading requirements for pro se litigants. In his complaint, Clark alleges that his constitutional rights were violated "both for [his] participation and testimony in federal court in a class action against OSP, and for [his] complaints against some of them individually." Clark further claims that the "2.4 cubic feet and pack-up procedures" were inadequate, and that application of them to him violated his First Amendment rights "because these adverse actions were taken against [him] for exercising [his] rights to access the courts and filing complaints and grievances." According to these allegations, Clark might be able to put forth evidence connecting these officers' actions to Clark's involvement in a class action lawsuit, entitling Clark to relief for retaliation. Even if it is unlikely that Clark will prove these facts, that does not make dismissal appropriate. See *id.* at 437. Thus, Clark adequately pleaded retaliation, through the confiscation of his property, for his involvement in a class action lawsuit and his filing of other complaints and grievances.

*Id.*[6]

All of the other constitutional claims asserted by Plaintiff were rejected by the Sixth Circuit.

The Sixth Circuit concluded that Plaintiff's retaliation claim predicated on his complaints to the

---

[6]It is important to note that the Sixth Circuit affirmed the dismissal of Plaintiff's equal protection claims predicated upon the selective enforcement of prison policies. *Id.* at 818. ("Without at least a suggestion that other inmates at OSP were permitted to possess property in excess of the policy's limit or that OSP officials enforced the property limitations with the purposeful intent of discriminating against Clark, Clark cannot make out a "class of one" equal-protection claim.") It is equally important to note that Plaintiff's remaining retaliation claim does not challenge the constitutionality of the prison procedures, but, instead, argues that they were incorrectly applied in retaliation for his constitutionally protected conduct. As part of his denial of access to courts claim, Plaintiff alleged that the 2.4 pack up policy at OSP violates equal protection as it "restricts those inmates who engage in litigation to only being allowed to [possess] half the [amount] of personal [property] of those who [do not] and appears to have been specifically designed to have a chilling effect on inmate litigation." However, the Sixth Circuit concluded that Plaintiff failed to plead any actual injury in relation to this denial of access to courts claim. *Id.* at fn. 10.

ODRC official that allegedly resulted in the false conduct reports, and, ultimately his placement in segregation, were properly dismissed because Plaintiff failed to demonstrate that his previous grievances, which were the subject of the complaints to the ODRC official, were not frivolous.[7] Plaintiff's denial of access to court claim was rejected because he failed to allege any specific claims or actual appeals he intended to file, and failed to demonstrate that the claims or appeals were not frivolous.[8] With respect to Plaintiff's denial of access to courts claim predicated upon his contention that the 2.4 pack-up policy itself has a chilling effect on prisoner litigation, the Court concluded that Plaintiff failed to plead any actual injury resulting from the policy.  Plaintiff's equal protection claim based upon the selective application of the policy did not survive because of Plaintiff's failure to allege a similarly situated prisoner was treated more favorably in regard to the pack up procedure.

On June 27, 2011, the undersigned issued an Order granting Plaintiff's motion to file a second amended complaint, which restated all of the claims in his original and first amended complaints, even those claims that the Sixth Circuit concluded were properly dismissed by this

_____

[7]Although "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf, ... [t]his right is protected ... only if the grievances are not frivolous." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000).  In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but "only to the extent that the underlying claims ha[ve] merit." *Id.*

[8]Though prisoners do have a constitutional right to meaningful access to the courts, which is grounded in many sources, in order to adequately state a claim for a denial of access to courts, a prisoner must set forth actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 351-55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  In addition, *Lewis* requires that the prisoner demonstrate that the underlying claim allegedly prejudiced is not frivolous. *Hadix v. Johnson*, 182 F.3d 400, 405–06 (6th Cir.1999); see also *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (noting that "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation"). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin–Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir.2005) (citing *Jackson v. Gill*, 92 Fed.Appx. 171, 173 (6th Cir.2004)).

Court. Because the second amended complaint provided a slightly cleared description of the conduct alleged, the undersigned granted the motion to amend. However, the undersigned cautioned Plaintiff that the previously dismissed claims were not revived as a result of the second amended complaint and that he was prohibited from asserting the previously dismissed claims. ECF Dkt. #123.

Discovery on the sole remaining claim proceeded, and, on June 1, 2012, Defendants moved for summary judgment. ECF Dkt. #161. As of the date of this report and recommendation, this matter has been fully briefed.

## II. STANDARD OF REVIEW

Summary judgment should be granted "where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Johnson v. Karnes*, 398 F.3d 868, 870-873 (6th Cir. 2005). The Court must decide, "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

A party seeking summary judgment bears the initial burden and must inform the court of the basis for its motion. *Celotex*, 477 U.S. at 323. Further, the moving party must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" which demonstrate the absence of a genuine issue of material fact. *Id.* Here,

6

the parties rely upon unsworn declarations.  An unsworn declaration may satisfy Rule 56(e) if it is signed, dated, and recites that it was signed "under penalty of perjury that the foregoing is true and correct."  See *Sfakianos. v. Shelby County Government,* 481 Fed.Appx. 244 (6th Cir. 2012) citing 28 U.S.C. § 1746(2).  The moving party must make a showing that no reasonable jury could find other than for the moving party.  *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party satisfies its burden, the nonmoving party must demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993), see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must present "some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."  *60 Ivy St. Corp.*, 822 F.2d at 1435, see *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 288-290 (1968).

III.    LAW

Under 42 U.S.C. §1983, an individual may bring a private right of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes.  *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353 (1997).  A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. See *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).

7

To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was taken at least in part because of the exercise of the protected conduct. *Id.* With respect to the third prong, conclusory allegations of retaliatory motive "unsupported by material facts will not be sufficient to state ... a claim under §1983." *Id. quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir.1987). If the plaintiff is able to make a *prima facie* case of retaliation, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.*; *Thaddeus-X*, 175 F.3d at 399.

IV.    MOTION FOR SUMMARY JUDGMENT

Defendants advance four arguments in their motion for summary judgment. First, Defendants contend that Plaintiff has failed to establish that any of the named defendants were aware of his participation in the class action suit and the filing of his other complaints and grievances. They further contend that Plaintiff has failed to articulate each defendant's involvement in the confiscation of his property.[9]

In their second argument, Defendants contend that Plaintiff has failed to establish the third element of his *prima facie* case, that is, he has not demonstrated a causal connection between his protected activity and the adverse action. More specifically, Defendants argue that more than three

---

[9]Defendants predicate their motion for summary judgment on the allegations in the Second Amended Complaint. Defendants do not address Plaintiff's declaration, which was attached to Plaintiff's opposition brief, except to say that it is in large part a restatement of the allegations in the Second Amended Complaint.

years[10] passed between Plaintiff's protected activity (his testimony in the class action lawsuit) and the confiscation of his legal materials, and, therefore, there is no temporal proximity between the two events.  With respect to Plaintiff's complaints and grievances, Defendants contend "Plaintiff does not allege that he filed any [ ] specific grievances against any [ ] specific staff members prior to the confiscation of his legal files."  ECF Dkt. #161 at p. 10.  Furthermore, Defendants argue that Plaintiff has failed to produce any other evidence to establish a causal connection between his protected activity and the adverse action.

In their third argument, Defendants contend that Plaintiff has failed to demonstrate that he suffered harm as a result of the confiscation of his legal materials.  The Sixth Circuit has recognized that some "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law. See *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir.2002); *Thaddeus–X*, 175 F.3d at 398–99. However, Defendants have not cited any case law that supports the conclusion that the confiscation of legal materials is a *de minimis* adverse action. As a matter of fact, the Sixth Circuit acknowledged in the previous appeal that it has "suggested in dicta that a retaliatory cell search and seizure of an inmate's legal documents satisfies the adverse action prong of the *Thaddeus-X* test." *Clark* at 815 (citing *Walker v. Bain*, 257 F.3d 660,664 (6th Cir.2001)).  Accordingly, for the purpose of this

---

[10]According to the recitation of facts set forth in *Austin v. Wilkinson*, 372 F.3d 346 (6th Cir.2004), the complaint in the class action lawsuit was filed on January 1, 2001.  *Id.* at 350.  Following a bench trial conducted from January 2 to January 10, 2002, the district court concluded that the state's policy governing placement at OSP did not afford procedural due process in violation of the Fourteenth Amendment. *See Austin v. Wilkinson*, 189 F.Supp.2d 719 (N.D.Ohio 2002). The Sixth Circuit affirmed the lower court's decision on June 10, 2004. *Austin,* 372 F.3d 346.  The conduct reports leading to the confiscation of Plaintiff's legal materials occurred in March and April of 2005.  On June 13, 2005, the United States Supreme Court concluded that the state's informal, nonadversary procedures for placement of inmates at OSP were adequate to safeguard inmates' liberty interest in not being assigned to the supermax facility. *Austin v. Wilkinson*, 545 U.S. 209 (2005).

9

summary judgment motion, the undersigned will assume that Plaintiff has established the second element of his *prima facie* case.

Finally, in their fourth argument, Defendants assert that, even assuming *arguendo* that Plaintiff has established a *prima facie* case of retaliation, Defendants have shown that the adverse action would have been taken regardless of Plaintiff's protected activity. Because the adverse action in this case involves the enforcement of a prison regulation, Defendants contend that the regulation would have been enforced without regard to Plaintiff's involvement in the class action suit or his internal complaints regarding OSP personnel.

V.    FACTS

Defendants offer the declaration of Laura Johnson, the Unit Manager at OSP at all times relevant to the Second Amended Complaint, in support of their motion for summary judgment. ECF Dkt. #161-1. According to the Johnson declaration, Plaintiff received conduct reports on March 28, 2005 and April 8, 2005 for possessing more personal property than was permitted under ODRC regulations and policies. *Id.* at ¶6. Following the April 8, 2005 conduct report, Plaintiff's excess property was confiscated by corrections officers.

Ohio Adm. Code §5120-9-33 governs the possession of personal property by prison inmates and generally restricts their possessions to 2.4 cubic meters of property. ORDC Policy 59-LEG-01 provides an exception to the personal property restriction and allows an inmate to request extra personal storage space to accommodate his personal legal files if he accumulates more than can be stored in the standard 2.4 cubic meters footlocker. However, the policy only allows extra storage space to accommodate excess legal files for cases that are still active and requires the inmate to provide a list of active cases upon request. For inmates who have excess personal legal material

10

stemming from inactive cases, the policy does not allow extra storage space and requires inmates to either mail the materials to a third party or dispose of them.

Ohio Adm. Code §5120-9-55 governs the disposition of inmate personal property which is deemed contraband.  Under this regulation, inmate property, which is normally permitted, may be contraband when the inmate possesses it in quantities that are prohibited.  Contraband items may be sent out of the institution, if the inmate agrees to pay postage costs.  Depending on the value of the property in question, it may be donated, destroyed, or used for training and other purposes with the permission of the inmate or upon issuance of an order of forfeiture by the court of common pleas in the county in which the institution is located.  This process is referred to "probating" an inmate's property.  *Id.* at ¶5.

According to the Johnson declaration, Plaintiff's legal files were not considered "active" because there was nothing on the face of the documents that "obviously showed they were part of any ongoing litigation.  *Id.* at ¶8. Prior to the meeting with [Plaintiff], Ms. Brady, the OSP Paralegal, checked the case numbers [Plaintiff] had provided to her and she determined that he did not have any active cases."  *Id.*  OSP staff members relied upon Ms. Brady's determination.  *Id.*  In April of 2005, U/M Johnson, Mrs. England, Mr. James, and Jeff Remmick attended a meeting, the purpose of which was to explain to Plaintiff that the files he claimed were "active" did not fall under ODRC Policy 59-LEG-01.  *Id.* at ¶9.  They informed Plaintiff that his files were not a part of ongoing or pending litigation which would provide a reasonable exception to the 2.4 cubic meters restriction.  *Id.*  As a consequence, Plaintiff's files were held in the OPS property room.  *Id.* at ¶11.

The Johnson declaration concludes, "The decision to confiscate [Plaintiff's] excess legal files was not a part of a conspiracy to retaliate against [Plaintiff] either for his use of ODRC's grievance

11

system or his participation in a class action lawsuit.  We were simply enforcing ODRC policies with regard to limits placed on an inmate's personal property."  *Id.* at ¶12.

Plaintiff submitted a sixteen-page declaration in support of his opposition to the summary judgment motion, which is a recitation of a series of alleged adverse actions taken against him while he was an inmate at OSP.  ECF Dkt. #172-1.  According to Plaintiff's declaration, he was transferred to OSP a few months after it opened in November of 1998, on "trumped up charges" and for the purpose of filling bed space in order to justify the construction of the Supermax facility.  ECF Dkt. #172-1 at ¶1. From the beginning, Plaintiff was active in filing complaints in an attempt to change the adverse conditions at the facility, which included, according to his declaration, assaults by the staff, being chained to the floor in the visiting booths, unnecessary strip searches, and the complete lack of outdoor recreation.  *Id.* at ¶2.

Plaintiff states that he immediately began suffering retaliation, which led him to become a plaintiff in *Austin v. Wilkinson, supra.*  *Id.* at ¶3.  Plaintiff further states that the retaliation intensified after the class action lawsuit was filed.  *Id.* at ¶4.  Plaintiff then recounts numerous incidents at the facility, some incidents that directly relate to his sole remaining constitutional claim predicated upon the confiscation of his legal materials, some incidents that were the subject of his previously dismissed constitutional claims, and other incidents that are unrelated to any of the constitutional claims asserted in the Amended Complaint.

As stated earlier, the undersigned permitted Plaintiff to file the Second Amended Complaint, but cautioned him that he may not resurrect the dismissed constitutional claims.  Instead, Plaintiff is attempting to establish his *prima facie* case by attributing to the remaining constitutional claim several of the alleged adverse actions that he originally attributed to other protected activity in his

Amended Complaint.  Plaintiff writes, ". . .Defendants are [ ]attempting to limit the focus here just to the initial confiscation of my legal papers, but my allegations include references to the acts that led up to and immediately followed this, and even the subsequent retaliatory actions that are not a part of my retaliation claim are intended to show motive, or retaliatory intent, and therefore the vast majority of the allegations in my Second Amended Complaint relate to the claim in question."  ECF Dkt. #172 at p. 2.

In a previous ruling on objections to a discovery order entered by the undersigned, the Court held that Plaintiff could not rely on any alleged adverse actions – other than the confiscation of his legal property – to establish his retaliation claim.  *See* ECF Dkt. #131 at p. 6-7.  The Court recognized that the Sixth Circuit remanded a single closely-circumscribed constitutional claim in this case.  Accordingly, the undersigned will limit the evidence considered on summary judgment to the events surrounding the sole adverse action at issue in this case, that is, the confiscation of Plaintiff's legal materials.

It is important to note that every individual named in the following restatement of the relevant facts taken from Plaintiff's declaration is a defendant in this action with two exceptions, which are noted herein.  At page five of the declaration, the narrative reaches the point in time when Plaintiff returned to the general population where Mr. Hill, who is not a defendant in this case, was the Unit Manager and Sgt. Johnston was the Block Sergeant.  ECF Dkt. #172-1 at ¶22.  Plaintiff states that "the harassment began with such things as Sgt. Johnston selectively sending C/O's to search [Plaintiff's] cell and 2.4[11] [him] for no reason, and have them write petty conduct reports on

---

[11]Plaintiff defines the phrase "being 2.4'd" as "being required to conform to the 2.4 cubic meters limitation of personal property per ODRC Policy, and entails having an officer observe you going through your belongings while you put them into a 2.4 cubic meters box."  ECF Dkt. #172-1 at ¶63.

[him]." *Id.* at ¶27.  Evidently, at some time prior to March of 2005, U/M Johnson became the Unit Manager assigned to the general population, because Plaintiff states that he complained about Sgt. Johnston to U/M Johnson, but she would just excuse it and cover for her.  *Id.* at ¶29. Although the declaration specifically names Sgt. Johnston and U/M Johnson, it does not indicate the actual date that Plaintiff returned to the general population, so there is no way to credit Plaintiff's allegations, which are both temporally and factually vague.   The undersigned restates this portion of the declaration purely as a way of introducing the defendants involved in the confiscation of Plaintiff's legal materials.

Turning to the events of March 28, 2005, Plaintiff states that "C/O Lyons issued a second[12] C/R [conduct report] for contraband[13]. . .when in reality [Plaintiff] was only over the limit on some magazines; which under normal circumstances would not of even been mentioned, much less written up as contraband."  *Id.* at ¶44-45.  Plaintiff further states that the pack-up of his personal property was conducted outside of his presence, in violation of OSP and ODRC Policy, and that "[a]ll the larger items of personal property, such as his blankets and towels, were balled up and stuffed in the box, as opposed to being folded, in order to make it appear as if [he] had more property than [he] actually did." *Id.* at ¶46-48.  According to Plaintiff's declaration, C/O Lyons informed him that Sgt. Johnston directed C/O Lyons to write him up "for whatever possible, even directing C/O Lyons in what specific items to take." *Id.* at ¶49.

---

[12]The first conduct report issued by C/O Lyons resulted in Plaintiff's placement in segregation, and was the subject of his previously dismissed retaliation claim.

[13]A copy of the conduct report issued by C/O Lyons is attached to the Declaration of Laura Johnson. See ECF Dkt. #161-1.

14

When Sgt. Johnston came to segregation to hear the conduct report, she refused to hear what Plaintiff had to say and proceeded to find him guilty and impose punishment. *Id.* at ¶54. Plaintiff's personal property was not returned to him upon his release from segregation, which is contrary to institutional policy. *Id.* at ¶63. Plaintiff was told that U/M Johnson had ordered that he be "2.4'd" before his property was returned.

Plaintiff states that he was given an opportunity to pack all of his personal property in one box and all of legal property in another "not quite full box." Plaintiff states that he had been "expressly permitted to have his legal property in his cell by Mr. Hill." *Id.* at ¶68. He asserts that, contrary to official policy, inmates were permitted to retain their legal materials in their cell unless the materials were voluminous. *Id.* at ¶69.

Because Plaintiff knew he could have his legal materials stored in a place outside of his cell, he chose to keep his personal property. The confiscation of Plaintiff's legal materials occurred on April 8, 2005, when he received his second conduct report for contraband. *Id.* at ¶71.

On April 9, 2005, Plaintiff was called to sort his legal materials and organize them by case. He divided them into three categories: (1) material pertaining to his criminal conviction; (2) material pertaining to the class action lawsuit (which was on appeal before the United States Supreme Court); and (3) current complaints and grievances. Plaintiff was instructed to give the list to OSP's paralegal, Ms. Brady. *Id.* at ¶73.

Plaintiff was then called to a meeting with several OSP staff members, "including Mr. Remmick, Deputy Warden, Mrs. England, OSP Inspector, Mr. James, UMA, Ms. Johnson, U/M, Mrs. Johnston, Unit Sergeant, etc." *Id.* at ¶74. Plaintiff states that they were all "bully[ing] him

15

into accepting the idea that his case records and research relating to his criminal conviction were not a "current case."  *Id.* at ¶63.

On April 20, 2005, Sgt. Johnston came to hear the complaint regarding Plaintiff's legal property (presumably referring to the April 8, 2005 conduct report).  *Id.* at ¶86. Plaintiff argued that he could not be written up and punished for the same thing twice, that is, the possession of contraband on March 25, 2008 and April 8, 2005.  Nonetheless, he was found guilty.  According to Plaintiff, Sgt. Johnston and U/M Johnson threatened to destroy his legal materials.  *Id.*  at ¶96.

Plaintiff filed a complaint with U/M Johnson, which was "brushed aside."  *Id.* at ¶97. Plaintiff then contacted Mrs. Gabauer, the head of the legal department, who maintained that Plaintiff had no open cases.  *Id.* at ¶98.

Next, Plaintiff contacted Sgt. Shabazz and Capt. Williams in the property room in order to determine the process involved in probating property at OSP, but Plaintiff was given "the run-around."  *Id.* at ¶99.  Plaintiff then spoke to Mr. James, who told him to file a complaint regarding the harassment, retaliation, and withholding of his legal materials.  Plaintiff sent Mr. James a complaint on April 28, 2005, but it was never addressed.  Plaintiff's Decl. at ¶106. Plaintiff then informed Mrs. England that Mr. James refused to respond to his complaint.  On May 6, 2005, Capt. Williams informed Plaintiff that Mrs. England said that he could not go through his property because it was being probated and destroyed.  *Id.* at ¶107.

Plaintiff sent two kites to Lt. Williams in late April and early May of 2005 in an effort to retrieve his legal materials.  *Id.* at ¶109-110.  When Plaintiff did not receive a timely response to the kites, he sent a complaint to both Lt. Williams and U/M Johnson.  *Id.* at ¶98.  Lt. Williams responded that he had spoken to Sgt. Johnston and U/M Johnson, who informed him that nothing

16

could be done for Plaintiff because he had already been given several chances to go through his property. *Id.* at ¶112-113.

When Lt. Bright took over as Supervisor of the mail/property room, Plaintiff contacted him about going through and sending out his property. *Id.* at ¶119. After about three months of giving Plaintiff "the run-around," Lt. Bright sent Plaintiff's property home at Plaintiff's expense. *Id.* at ¶120.

Plaintiff concedes that Defendants never destroyed his legal materials, but, instead, just held the materials for over a year, never allowing him access to it. *Id.* at ¶117. Plaintiff further states that he still needs his legal materials and has not has access to it since it was taken.[14] *Id.* at ¶120.

Plaintiff attached a number of documents to his Declaration. The first attachment is a list of complaints filed by Plaintiff from 2001 to 2005. ECF Dkt. #172-2. The list identifies no less than twenty-eight complaints filed during that time, which range from a request that newer movies be made available through the rental service, to being denied one half of an hour of visitation time, to accusations of harassment by OSP staff.

Plaintiff filed five complaints in December of 2004 and January of 2005. On December 2, 2004, Plaintiff filed a complaint alleging harassment by Sgt. N. Johnston. *Id.* at p. 3. On December 6, 2004, Plaintiff alleged that the mail room was withholding a CD-rom he received from a publisher. *Id.* On December 29, 2004, Plaintiff accused U/M Cencarik, who is not a defendant in

---

[14]The allegations in Plaintiff's Declaration involving Defendants, Unknown Wylie, Mrs. Diana Carter, and Ms. Unknown Salata, all members of the Rules Infraction Board, and Mr. Carter, relate to previously dismissed constitutional claims. Accordingly, the undersigned recommends that summary judgment is appropriate with respect to these defendants regardless of the resolution of the sole retaliation claim at issue in this case. The allegations in Plaintiff's Declaration involving Defendant, Lt. Jackson [Ted Jackson] likewise relate to alleged retaliatory conduct that is not at issue in this case. See ECF Dkt. #172-1 at ¶5-6. Therefore, the undersigned recommends that summary judgment is appropriate with respect to Lt. Jackson as well.

this case, and Sgt. Johnston of "harassing him.  Claim re: conduct report and property."  *Id.* at p. 4.

Two complaints, both dated January 26, 2005, allege harassment by "Unit staff"  and the

confiscation of his "Walkman."  ECF Dkt. #172-2 at p. 1. The foregoing complaints are the only five

complaints that were lodged within the four months prior to the confiscation of Plaintiff's legal

materials in April of 2005.

Plaintiff also attached two documents, captioned "Disposition of Grievance," to his

Declaration.  The first document addresses Plaintiff's complaint, dated December 29, 2004.  ECF

Dkt. #172-4.  The document reads, in pertinent part:

> Staff present recalled the incident was precipitated by [Plaintiff], and that he was
> indeed out of place.  The allegation that other inmates have committed this rule
> infraction without punishment is irrelevant.  Property room staff have shown me
> records and personally recalled that [Plaintiff] was brought down to the property
> room to go through his property in December 2004.  Based upon available evidence,
> I cannot support [Plaintiff's] allegation that his unit staff is harassing him.  The
> officer who authored the out of place ticket stated that he earned it, and he has been
> given the opportunity to go through his property.

The document is signed by the Inspector of Institutional Services.

The second document, dated May 27, 2005, resolves a complaint that Plaintiff filed on May

4, 2005, which alleges ongoing harassment by Sgt. Johnston and U/M Johnson, as well as the

confiscation of his legal materials.  The document reads, in pertinent part:

> [Plaintiff] has been instructed that his non-compliance to stay within property limits
> and follow Institutional rules have led to him incurring so much trouble with staff.
> [Plaintiff] has received conduct reports for having contraband and for disobedience
> fo a direct order.  In all cases it is apparent that [Plaintiff's] action have precipitated
> staff to write conduct reports. [Plaintiff] has been afforded opportunities to remain
> within possession limits.  There is no indication in files of from other inmates that
> [Plaintiff] has received disparate treatment.

[Plaintiff] has been given direction by this office, legal services, and his unit staff regarding his
property issues. He has failed to provide active cases that can be verified with the Courts at this time.
He has failed to comply with 2.4 property limitation.  After much discussion and attempted

18

misdirection [Plaintiff] has neither requested permission to store nor shown a valid reason to store his excess property/paper, which he claims are general and personal legal materials.  He has been afforded all necessary paperwork to request storage. [Plaintiff] has been given ample opportunity to comply with policy, and he shows no intention of doing so.  Based on available evidence, this office cannot support [Plaintiff's] claim of harassment.

The document is signed by the Inspector of Institutional Services.

The final attachment, captioned "Hearing Officer's Report," is dated March 30, 2005 and is signed by Sgt. Johnston.  The report reads, in pertinent part, "During a 2.4 seg pack-up, inmate was over the limit of 95 pictures, 5 book [sic], 26 magazines and loose leaf paper."  ECF Dkt. #172-5.  Sgt. Johnston concluded that Plaintiff's property was "over the limit upon inspection" and that "[Plaintiff] refused to send home or destroy contraband."

Plaintiff purports to attach as "Exhibit A-6" a "true copy of the contraband slip filled out by Sgt. Johnston."  See ECF Dkt. #172-1 at p. 8.  However, a copy of the contraband slip is not attached to the declaration.  Defendants attached a conduct report dated April 8, 2005 to the Declaration of Laura Johnston, see ECF Dkt. #164-5, which appears to be the "contraband slip" to which Plaintiff refers.

## VI.    ANALYSIS

The sole retaliation claim remanded by the Sixth Circuit was predicated upon two "protected activities," that is, Plaintiff's participation in the class action lawsuit, and his internal complaints and grievances.   The undersigned will address each alleged "protected activity" separately for the purpose of clarity.

### A.    PARTICIPATION IN *AUSTIN V. WILKINSON*

There is no question that Plaintiff's involvement in the class action lawsuit constitutes protected activity, and, as stated previously, the Sixth Circuit in the appeal of this case recognized

19

that the confiscation of Plaintiff's legal materials may constitute an adverse action.  However, based upon the evidence before the Court, Plaintiff has not established the third element of his *prima facie* case, that is, Plaintiff has not demonstrated that the confiscation of his legal property was undertaken at least in part because of his involvement in the class action lawsuit.

Defendants correctly argue that Plaintiff cannot demonstrate any temporal proximity because more than three years passed between his testimony at the bench trial in 2002 and the confiscation of his legal property in 2005.  Defendants also correctly argue that Plaintiff has not offered any other evidence, either direct or circumstantial, to show that his legal materials were confiscated for any other reason than his violation of the regulations governing the retention of personal property. Accordingly, the undersigned recommends that summary judgment be granted on the retaliation claim, as it relates to Plaintiff's participation in the class action lawsuit, based upon Plaintiff's failure to establish the third element of his *prima facie* case.

B.    INTERNAL COMPLAINTS AND GRIEVANCES

As the Sixth Circuit recognized in the previous appeal of this case, although an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf, this right is protected only if the grievances are not frivolous.  See *Clark* at 812, citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000).  In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but "only to the extent that the underlying claims have merit." *Id.* Here, is impossible to determine whether any of Plaintiff's twenty-eight grievances were meritorious based upon the list of complaints provided by Plaintiff, with exception of the complaint filed on December 29, 2004.

Plaintiff attached the disposition of his December 29, 2004 complaint to his declaration. See ECF Dkt. #172-4 at p. 1. The Inspector of Institutional Services concluded that Plaintiff's complaint based upon a "ticket" that charged him with being "out of place" had no merit. Plaintiff asserted in his complaint that the "ticket" was given to him purely as a form of harassment, because other inmates were out of place and were not charged. He further asserted that he had not been given an opportunity to "go through his property." *Id.*

The Inspector concluded that the out-of-place charge was valid based upon the testimony of OSP staff members who witnessed the incident. The Inspector further concluded that "[p]roperty room staff had shown [her] records and personally recalled that [Plaintiff] was brought down to the property room to go through his property in December 2004." *Id.*

Accordingly, Plaintiff has not demonstrated that the complaints that allegedly precipitated the confiscation of his legal property were not frivolous. Because frivolous grievances do not constitute "protected activity," Plaintiff cannot establish the first element of his *prima facie* case based on his internal complaints and grievance.

Furthermore, even assuming *arguendo* that Plaintiff's internal complaints and grievances constitute "protected activity," Plaintiff cannot establish the third element of his *prima facie* case, that is, he cannot show that his legal materials were confiscated at least in part because of his internal complaints and grievances. Although there is a loose temporal proximity between the five complaints he filed in December of 2004 and January of 2005 and the confiscation of his legal materials in April of 2005, temporal proximity alone is insufficient to establish the required causal connection. This is particularly true in the above-captioned case where the evidence establishes that Plaintiff filed internal complaints on a regular basis throughout his incarceration at OSP. The

21

evidence that Plaintiff was a vocal and constant critique of the OSP staff from the beginning of his incarceration belies any inference that the confiscation of his legal materials was motivated in any part by the internal complaints he filed in December of 2004 and January of 2005. See *Jackson v. Madery*, 158 Fed.Appx. 656 (6th Cir.2005 unreported)("Jackson's lack of other evidence showing or suggesting causation, and his evident tendency to file grievances and complaints frequently, many of which were rejected because they did not meet the requirements of PD 03.02.130, weigh against holding that a genuine issue of material fact as to the third element is created solely on the basis of temporal proximity.")  Accordingly, the undersigned recommends that summary judgment be granted on the retaliation claim, as it relates to Plaintiff's internal complaints and grievances, based upon Plaintiff's failure to establish the first and third elements of his *prima facie* case.

## C.      PLAINTIFF VIOLATED ODRC REGULATIONS

Even assuming *arguendo* that Plaintiff established a *prima facie* case of retaliation based upon his participation in the class action lawsuit and/or his internal complaints and grievances, summary judgment is still warranted because Defendants have established that Plaintiff's legal materials would have been confiscated regardless of his protected activity.

Plaintiff appears to advance three arguments to show that there is a genuine issue of material fact as to whether Defendants would not have enforced the regulation but for Plaintiff's protected activity.  First, Plaintiff contends that he was not in violation of the 2.4 cubic meters, that is, that his blankets and towels were "balled up" to make it appear that he was in violation of the regulation. To the extent that Plaintiff contends that the conduct reports dated March 28 and April 8, 2005 are false, the Sixth Circuit has held that "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim [based upon an allegedly false conduct

report].” *Jackson*, 656 Fed.Appx 662. Here, Plaintiff was found to be in violation of ODRC rules governing personal property. See ECF Dkt. #161-1.

Next, and contrary to his claim that he was not in violation of the 2.4 cubic meters regulation, Plaintiff argues that the rule was not enforced against other inmates and that his previous Unit Manager, Mr. Hill allowed him to keep his excess legal materials in his cell. Of course, Plaintiff's constitutional claim predicated upon the selective enforcement of the regulation was previously dismissed by this Court. Furthermore, to the extent that Plaintiff concedes that he was, in fact, in violation of the personal property regulation, such an admission supports Defendants assertion that a violation occurred.

Plaintiff's final argument is that OSP officials incorrectly characterized his legal materials as not relating to “open cases.” The evidence before the Court establishes that Plaintiff's assertion that his legal materials related to “open cases” was given due consideration by the appropriate OSP staff members. Moreover, he has offered no argument to show that OSP staff members improperly characterized his legal files.

Consequently, Plaintiff has not offered any evidence to contradict U/M Johnson's assertion that Plaintiff's legal materials would have been confiscated regardless of his protected activity, and, therefore, the undersigned recommends that the motion for summary judgment be granted.

VII.   CONCLUSION

The evidence before this Court establishes that Plaintiff was a vocal critic of the staff at OSP throughout his incarceration. The evidence further establishes that Plaintiff, despite being cited for contraband on two occasions in late March and early April of 2005, made no effort to reduce the amount of personal property in his cell. Furthermore, the evidence before the Court does not

establish  a causal connection between Plaintiff's participation in the class action lawsuit in 2002

and the confiscation of his legal materials in 2005.  Moreover, Plaintiff has not established that any

of the  complaints and grievances he filed at OSP were not frivolous, therefore, those complaints and

grievances do not constitute protected activity.  Even assuming that his complaints and grievances

constitute  protected  activity,  Plaintiff  has  not  demonstrated  a  causal  connection  between  his

complaints  and  grievances  and  the  confiscation  of  his  legal  materials.   Plaintiff  relies  upon

unsupported allegations of retaliatory motive rather than operative facts.  Finally, even assuming

arguendo that Plaintiff has established a *prima facie* case of retaliation, he has not shown that there

is a genuine issue of material fact as to whether the 2.4 cubic meters regulation would have been

enforced regardless of his protected activity.  Accordingly, the undersigned recommends that the

Court grant Defendants' motion for summary judgment, ECF Dkt. #161, and dismiss this case in its

entirety with prejudice.


Dated: January 15, 2013.


                                                  */s/ George J. Limbert*
                                                  **GEORGE J. LIMBERT**
                                                  **UNITED STATES MAGISTRATE JUDGE**

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court
within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file
objections within  the  specified  time  WAIVES  the  right  to  appeal  the  Magistrate  Judge's
recommendation. L.R. 72.3(b).