UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID E. CLARK,                              )        CASE NO. 4:07CV941
                                             )
                                             )
              PLAINTIFF,                     )        JUDGE SARA LIOI
                                             )
vs.                                          )        **MEMORANDUM OPINION**
                                             )
                                             )
N. JOHNSTON, et al.,                         )
                                             )
                                             )
              DEFENDANTS.                    )

## I. INTRODUCTION

Before the Court are plaintiff's objections (Doc. No. 179) to the Magistrate Judge's Report and Recommendation (R&R) (Doc. No. 174) and defendants' opposition to the objections (Doc. No. 182). Although this Court adopted the R&R on March 5, 2013 and dismissed the case, it did so under the impression that there were no objections filed. On March 6, 2013, however, plaintiff filed the instant objections. His certificate of service, signed under penalty of perjury pursuant to 28 U.S.C. § 1746, states that the objections were placed in the prison mail system on February 14, 2013, the day the objections were due. A cover letter[1] signed by plaintiff and dated February 28, 2012, however, establishes that the objections were not properly placed in the prison mail system for mailing, as plaintiff lacked sufficient funds for

---

[1] The cover letter was mailed with plaintiff's objections and placed in the physical file by the Clerk's office.

postage. (Doc. No. 179.) As discussed below, although the Court finds that plaintiff's objections were not timely filed, it will nonetheless review them de novo.[2]

## II. TIMELINESS OF OBJECTIONS

In their opposition to plaintiff's objections, defendants argue that the objections are untimely.

Under the "prison mailbox rule" announced in *Houston v. Lack*, 487 U.S. 266, 270 (1988), the date of filing is the date a document is "delivered . . . to prison authorities for forwarding to the District Court." *See also Wampler v. Mills*, 60 F. App'x 594, 596 (6th Cir. 2003) ("Submission to prison authorities may be evidenced by a certificate of service or by signing a motion under penalty of perjury."); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (absent contrary evidence, the "handing over" occurs on the date the pleading was signed).

Materials supplied by plaintiff and, at the Court's request, by Toledo Correctional Institution ("TOCI"), where plaintiff is currently incarcerated, show that plaintiff did originally submit his objections to the mailroom on February 14, 2013. (*See* Doc. Nos. 179-1 and 179-2; Doc. Nos. 181-1 and 181-2.) This is undisputed. (*See* Doc. No. 182 at 1190.) Because of insufficient funds in his account to pay the postage, his documents were returned to him on February 28, 2013. He then paid the postage and the objections were mailed on March 4, 2013, arriving at the Court on March 6, 2013. These facts are also undisputed. (*Id*.).

Defendants argue, however, that the lateness of plaintiff's objections should not be excused by the prison mailbox rule because, when plaintiff submitted his objections to the mailroom on February 14, 2013, he did not have sufficient funds in his prison account to pay the

---

[2] The Court has, been separate Order, vacated its original Memorandum Opinion and Judgment Entry issued on March 5, 2013 (Doc. Nos. 177, 178) and reopened the case.

postage. In other words, his objections were filed late because plaintiff failed to manage his limited financial resources. Since the purpose of the prison mailbox rule is to protect prisoners from delays over which they have no control, defendants argue that, with some pre-planning, plaintiff could have assured he had enough money to pay the postage. *See Martin v. Vannatta*, 175 F. App'x 45, 46 (7th Cir. 2006) (holding that the inmate's indigence was not beyond his control and "a little advanced planning" would have resolved his issue in obtaining postage for an internal administrative appeal in a timely fashion").

Defendants' argument is somewhat appealing even though, in a letter to the Court that accompanied the objections when they finally arrived, plaintiff stated: "As I've explained to the court before, the staff here hold your legal mail until long after you think its [sic] gone and make a miscalculation on your commissary or something else. This is what happened here; even though policy/law requires them to mail it within 48-hours." (Doc. No. 179-2.) Since this assertion by plaintiff is completely unsupported conjecture, it does not hold sway with the Court. Instead, the Court finds that it was plaintiff's lack of funds that caused his filing to be delayed.

That said, the Court notes that the docket also shows a March 7, 2013 payment by plaintiff in the amount of $14.50 toward the filing fee in this case. There is no indication as to when the payment check was actually dated, only that it was recorded by the Clerk on March 7, 2013. When plaintiff was granted leave to proceed in forma pauperis, this Court ordered as follows: "[T]he prison cashier's office shall deduct, and forward to the court, 20% of the preceding month's income credited to the prisoner's account each time the amount in the account exceeds $10.00 until the full fee has been paid." (Doc. No. 4 at 28.) Therefore, although there is no evidence to suggest that the prison cashier artificially manipulated plaintiff's account so as to

render his funds insufficient to cover his postage, the timing of this partial filing fee payment may have caused plaintiff's funds to be depleted.

Whatever the case, and although it appears that plaintiff's objections were untimely due to his own failure to manage his funds, given the unique circumstances surrounding this particular late filing, the Court will consider plaintiff's objections.

## III. DE NOVO REVIEW

### A.      Standard of Review

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at * 1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004). *See also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

This R&R relates to a motion for summary judgment. Therefore, upon de novo review of matters properly and specifically objected to, this Court must apply the standard set forth in Fed. R. Civ. P. 56, where, when a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**B.**     **Discussion**

      **1.**     **Factual and Procedural Background**

Plaintiff filed this pro se action on March 30, 2007 against various employees of the Ohio State Penitentiary ("OSP"), where he was then incarcerated. He amended the complaint on June 27, 2007, adding five more defendants, for a total of eighteen. His complaint, as amended, alleged denial of due process, cruel and unusual punishment, denial of access to courts, denial of property rights, and denial of equal protection, all in violation of the First, Sixth, Eighth, and Fourteenth Amendments. He asserted a pattern of harassment and retaliation by defendants in response to both his participation in a federal class action lawsuit brought by the ACLU against the prison and his filing of internal complaints and grievances against individual defendants. He specifically complained that prison officials had confiscated his personal property in violation of established institutional policy, singled him out for cell inspections and other

enforcement actions, denied him access to his legal property and to the courts, retaliated against him for filing grievances against prison officials, threatened him, retaliated against him by placing him in segregation after he attempted to complain to a visiting official from the Ohio Department of Rehabilitation and Corrections ("ODRC"), and entrapped him into making a forbidden three-way telephone call for which he was then punished.

On July 12, 2007, this Court dismissed all of plaintiff's claims sua sponte pursuant to 28 U.S.C. § 1915(e), except the part of his retaliation claim against defendants Art James and Unit Manager L. Johnson that related to being placed in segregation after speaking with the ODRC official. Discovery proceeded and cross-motions for summary judgment on the issue of qualified immunity were filed on the remaining claim. In December 2008, this Court granted defendants' motion for summary judgment based on qualified immunity.

Plaintiff appealed and, on February 22, 2011, the Sixth Circuit Court of Appeals affirmed all of this Court's rulings, with the exception of the dismissal of his retaliation claim based on participation in a class action lawsuit and the filing of other complaints and grievances, which had allegedly led to the confiscation of his personal and legal property. The court remanded for proceedings with respect to that sole remaining retaliation claim. *Clark v. Johnston*, 413 F. App'x 804 (6th Cir. 2011).

After remand, this Court referred the matter once again to the Magistrate Judge for general pretrial supervision and an R&R on dispositive motions. *See* Doc. Nos. 104, 169. Plaintiff moved to reinstate all of the dismissed defendants. The Magistrate Judge ruled that only *claims* had been dismissed, not any *defendants*, and, therefore, plaintiff's motion was moot. Plaintiff also sought leave to further amend his complaint. The Magistrate Judge denied that motion to the extent it sought to reassert claims whose dismissal had already been affirmed on

appeal; however, to the extent the proposed second amended complaint served to more specifically articulate facts relating to the preserved retaliation claim, the Magistrate Judge ruled that there would be no prejudice in permitting the amendment. (*See* Doc. No. 123.) The second amended complaint was filed. (*See* Doc. No. 132.) Pre-trial matters proceeded, with intervening orders by the Magistrate Judge and some objections by the plaintiff, all of which were resolved in due course.

Finally, on June 1, 2012, defendants filed their motion for summary judgment. (Doc. No. 161.) Other motions delayed the briefing on this motion. On January 3, 2013, the motion was finally at issue and, on January 15, 2013, the Magistrate Judge filed the R&R currently under consideration.

### 2.     The Report and Recommendation

The Magistrate Judge properly recites the elements a plaintiff must prove to establish a First Amendment claim of retaliation: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 174 F.3d 378, 394 (6th Cir. 1999).

Then, based on the fact that "[t]he sole retaliation claim remanded by the Sixth Circuit was predicated upon two 'protected activities,' that is, Plaintiff's participation in the class action lawsuit, and his internal complaints and grievances,]" (Doc. No. 174 at 1142), the R&R

separately evaluates the material facts relating to each protected activity in light of the three elements.[3]

The R&R correctly notes that the Sixth Circuit remand order identified both participation in the class action lawsuit brought by the ACLU against the prison and the filing of complaints and grievances (*provided they are non-frivolous*) as protected activities for purposes of the first element of the test for retaliation. The R&R also correctly notes the remand order's recognition that deprivation of personal and legal property *can be* considered an adverse action, for purposes of the second element of a retaliation claim.

The R&R then evaluates the facts surrounding each of the two protected activities and concludes that, as to plaintiff's participation in the class action lawsuit, because there was no temporal proximity (his testimony in the lawsuit having occurred three years prior to the confiscation of his property), plaintiff cannot, on the undisputed facts, establish the causal connection necessary for the third element of a retaliation claim based on that protected activity.

---

[3] The Magistrate Judge identified four arguments advanced by the defendants in their motion for summary judgment:

> (1) that plaintiff has failed to establish that any of the named defendants were aware of his participation in the class action suit and the filing of his other complaints and grievances, and that he has failed to articulate each defendant's involvement in the confiscation of his property;
>
> (2) that plaintiff has failed to establish the third element of his *prima facie* case, that is, he has not demonstrated a causal connection between his protected activity and the adverse action and, specifically, that too much time has elapsed between plaintiff's testimony in the class action lawsuit and the confiscation of his property, and plaintiff has failed to allege that he filed any specific grievances against specific defendants prior to the confiscation of his property;
>
> (3) that plaintiff has failed to demonstrate that he suffered harm as a result of the confiscation of his legal materials; and,
>
> (4) that, even assuming *arguendo* that plaintiff has established a *prima facie* case of retaliation, defendants have shown that the adverse action would have been taken regardless of plaintiff's protected activity.

The R&R found no support for defendants' third argument and addressed only the other three in light of the three elements of a retaliation claim.

As to plaintiff's filing of internal complaints and grievances, the R&R first concludes that it is impossible to determine whether the 28 grievances identified by plaintiff in Doc. No. 172-2 were non-frivolous (and, therefore, "protected activity" for purposes of the first element), with the exception of one complaint filed on December 29, 2004, for which there is related record evidence.[4] The R&R also notes that, although finding "a loose temporal proximity between the five complaints [plaintiff] filed in December of 2004 and January of 2005 and the confiscation of his legal materials in April of 2005, temporal proximity alone is insufficient to establish the required causal connection." (Doc. No. 174 at 1144.) This is particularly true where, as here, plaintiff's "vocal and constant critique of the OSP staff from the beginning of his incarceration belies any inference that the confiscation of his legal materials was motivated in any part by the internal complaints he filed in December of 2004 and January of 2005." (Doc. No. 174 at 1145) (citing *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) ("Jackson's lack of other evidence showing or suggesting causation, and his evident tendency to file grievances and complaints frequently, many of which were rejected because they did not meet the requirements of [prison grievance regulations], weigh against holding that a genuine issue of material fact as to the third element is created solely on the basis of temporal proximity.")). Accordingly, the R&R concludes that any claim of retaliation based on internal complaints and grievances also fails for lack of establishment of the requisite causal connection.

The R&R further concludes that, even if plaintiff were able to establish that his internal complaints and grievances were protected activities, he is unable to establish the requisite causal connection because the record also shows that his property was taken because he

---

[4] As to that one complaint, the record evidence shows it was rejected by prison officials because it was not based in fact.

10

was in violation of the particular policy requiring that each inmate's personal property must fit in a 2.4-cubic-foot box. The R&R notes that the Sixth Circuit has held that "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim [based upon an allegedly false conduct report.]" (Doc. No. 174 at 1145-46) (quoting *Jackson*, 656 F. App'x at 662).

The ultimate conclusion and recommendation of the R&R is that, on the undisputed facts, this Court grant defendants' motion for summary judgment and dismiss the case with prejudice.

### 3. Plaintiff's Objections and this Court's De Novo Review

Plaintiff filed objections stating, by way of introduction: "To be clear, I object to the Magistrate's Report and Recommendation in it's [sic] entirety, and further humbly request this Court to consider this summary judgment anew." (Doc. No. 179 at 1157.) Of course, under the statutes and rules governing review of an R&R, the Court need address only *specific* objections, not vague, general statements of disagreement. *See, e.g.*, *United States v. Molinaro*, 683 F. Supp. 205, 211 (E.D. Wisc. 1988) ("[T]he objecting party [is required] to state with particularity the points that the party is attacking in the Magistrate's decision. Without specific reference to portions of the Magistrate's decision and legal discussion on the objected portion, the district court's duty to make a de novo determination does not arise. The general statements that a party 'objects' and 'incorporates all arguments previously made to the magistrate' will not suffice.")

The Court will not grant de novo review of the entire motion, but only with respect to plaintiff's specific objections to identified portions of the R&R addressing the single retaliation claim that remains following remand.

As defendants note in their opposition brief, plaintiff does not list his objections or in any way attempt to specify what precise portions of the R&R are objectionable. His "objections" are in the form of a long narrative without a single reference to the R&R and/or to the record. The "objections" are also completely devoid of legal discussion. Nonetheless, the Court has carefully gone through plaintiff's narrative (*see* Doc. No. 179 at 1162-67) and has extracted what it believes to be his objections.

Plaintiff's first objection is that the R&R "consists of one inaccuracy, misstatement, and instance of misapprehension after another, and improperly finds key facts in favor of the Defendants and refuses to accept the facts as I've stated as true, contrary to the law." (Doc. No. 179 at 1162-63.) He asserts that "[t]he magistrate refuses to accept my declaration, or even the plain facts, as evidence." (*Id*. at 1163.)[5] The "declaration" referred to is Doc. No. 172-1. Even the most cursory review of the declaration reveals that it contains conclusory allegations, as opposed to record-supported facts, plus allegations that go far beyond the matter remanded by the court of appeals. There is no duty on the part of this Court to simply "accept" plaintiff's assertions just because they are submitted in the form of a declaration. Matters in the declaration must be supported by record evidence in order to be accepted for purposes of summary judgment analysis. *See* Fed. R. Civ. P. 56(c)(1). Furthermore, plaintiff makes no attempt to identify specific inaccuracies or misstatements, or to point this Court to key facts that were improperly construed in defendants' favor. Without this specificity, the Court cannot, and need not, sort through the record to make plaintiff's argument for him. This objection is overruled.

---

[5] Immediately following this assertion, plaintiff's "objections" veer off into criticism of this Court's denial of the full 30-day extension he sought for filing his objections. (Doc. No. 179 at 1163-64.) This, of course, is beyond the scope of the current exercise and need not be addressed.

Plaintiff's second objection is to the R&R's factual statement that he has been a vocal critic of the administration of the prison since the time of his incarceration. (Doc. No. 179 at 1164.) He asserts that he has been incarcerated since 1991, but only became a vocal critic in 1998, after he was transferred to OSP. This slight factual discrepancy does not negate the R&R's point: that, although plaintiff has been a *longtime* vocal critic, his property was confiscated only *after* it was found to be in violation of the prison space requirements. Since he was such a frequent critic, it was mere coincidence that he happened to have filed five grievances a few months before the confiscation occurred. For frequent critics, it is highly likely that there will be a temporal proximity between almost any disciplinary action and the filing of a grievance. Such "temporal relationship is not unusually suggestive." *Cardenas v. Massey*, 269 F.3d 251, 264 (3d Cir. 2001) (discussing retaliation in an employment context where "the alleged protected activity took place over a substantial period of time and any routine employment action taken during that period would necessarily be related temporally"). Temporal proximity must be "couple[d] . . . with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Accordingly, this objection is overruled.

Plaintiff's third objection is that he was *not* in violation of the space requirements, as found by the R&R, because he had been "2.4'd several times"[6] and had never had his legal papers taken away.[7] (Doc. No. 179 at 1165.) He asserts, without reference to any case law, that it

---

[6] "Being 2.4'd" entails having an officer observe as a prisoner goes through his belongings and puts them in a 2.4-cubic-feet footlocker.

[7] In support of defendants' motion for summary judgment, defendant Johnson submitted an affidavit outlining the relevant policies and regulations. Ohio Admin. Code § 5120-9-33 governs the personal property of inmates and prohibits an inmate from having more than 2.4 cubic feet of personal property in his possession. Under ODRC Policy 59-LEG-01, an inmate may request additional storage space, but the additional space will not be permitted unless his personal legal material for active cases takes up more than half of his permissible space. Legal material for inactive cases must be mailed out of the institution at the inmate's expense or otherwise disposed of. (Doc. No. 161-1 at 942, ¶ 4.) Ohio Admin. Code §5120-9-55 governs disposition of inmate personal property that is deemed to be contraband. Under this regulation, property which is normally permitted is deemed to be contraband if it is

is "well established that an official policy is not always the actual policy in practice." (Doc. No. 179 at 1165.)[8] He further argues that his "legal property" would not have been taken from him "absent [his] protected conduct because [his] documents were current and no reasonable person would have considered them otherwise." (Doc. No. 179 at 1166.)[9] It was, however, the conclusion of prison disciplinary proceedings that plaintiff was in violation of the regulations and policies relating to possession of personal property. Plaintiff does not, and cannot, deny that disciplinary hearings were conducted, that he was found guilty of violating the rules, and that, as a result, his property was confiscated. (*See* Doc. Nos. 164-4; 164-6.) As properly noted by the R&R, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" (Doc. No. 174 at 1131) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). Plaintiff argues that "[d]efendants have offered no explanations from which one could conclude that their personal animosity was in response to anything other then [sic] my protected conduct." (Doc. No. 174 at 1166.)[10] But, of course, that is not so. Defendants have shown that their actions resulted from application of prison regulations and, even if arguably motivated by personal animosity toward plaintiff because of his protected activity, would have been taken even absent the protected conduct. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) ("If the prisoner can show that the defendants' adverse action was at least

---

possessed in quantities that are prohibited. (*Id.*, ¶ 5.) Plaintiff argues, without explanation, that Johnson's affidavit "does nothing to support her cause[.]" (Doc. No. 179 at 1166.) The Court rejects this unsupported assertion.

[8] Plaintiff's claim that prison policies are selectively enforced against him was previously dismissed, with the dismissal being affirmed on appeal, and is not before the Court.

[9] The record, however, reflects that prison officials had a paralegal check the list of case numbers given to them by plaintiff to support his assertion that his legal property was related to current cases and she determined that he did not have any active cases. (Doc. No. 161-1 at 943, ¶ 8.) Plaintiff has not refuted this assertion with record evidence.

[10] Plaintiff sets forth "facts" that he claims are evidence of defendants' "personal animosity" toward him. (Doc. No. 179 at 1165-66.) He does not, however, point to the record in support of those facts and he does not clarify how, even if there were personal animosity on the part of defendants, it would have excused his violation of prison policy with regard to the amount of personal property he could possess.

partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants

to show that they would have taken the same action even absent such protected conduct.") (citing

*Thaddeus-X*, 175 F.3d at 399). This objection is overruled.

Plaintiff's fourth objection is to the R&R's reliance on *Jackson v. Madery*, 158 F.

App'x 656 (6th Cir. 2005).[11] He argues that it is "irrational and should not hold sway in the face

of other on point contrary reported authority." (Doc. No. 179.) Aside from the fact that Sixth

Circuit case law *does* apply unless and until it is overturned,[12] plaintiff has not identified other

authority from the Sixth Circuit (or any other circuit, for that matter) that is better or more

controlling authority. This unsupported objection is overrruled.

Plaintiff's fifth objection is that his complaints and grievances were not frivolous

and that defendants have not suggested they were. (Doc. No. 179 at 1167.) Even if the Court

accepts as true that every complaint and grievance was non-frivolous, that does not override the

conclusion that there is still no causal relationship between such protected activity and the

adverse action of taking his property pursuant to the prison rules regarding the amount of

allowable property. This objection is overruled.

Finally, plaintiff closes his objections by remarking that "it is not possible for me

to expand more upon the magistrate's confounding Report and Recommendation." (Doc. No.

---

[11] In *Jackson*, a prisoner brought an action against various corrections officers alleging a conspiracy to violate his civil rights and retaliation for his filing of a federal civil suit against one of the officers. The district court dismissed the complaint in its entirety. The court of appeals affirmed, concluding that, because plaintiff had violated a prison rule, that violation "'essentially checkmates [a] retaliation claim.'" *Jackson*, 158 F. App'x at 662 (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).

[12] Although *Jackson* is an unpublished case, it constitutes persuasive, if not binding, authority. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

179 at 1167.) It is, however, precisely his burden to do so if he seeks de novo review.[13] To the extent this may be construed to be an objection, it is overruled.

## IV. CONCLUSION

For the reasons discussed herein, to the extent plaintiff's objections can be found to be proper and specific within the meaning of the relevant rules for de novo review, they are all overruled. Plaintiff having failed to establish any material factual dispute by reference to the record, and defendants being entitled to summary judgment on the sole remaining retaliation claim, defendants' motion for summary judgment is granted and this case is dismissed. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: March 28, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[13] When the Sixth Circuit concluded that remand was appropriate because petitioner "adequately pleaded retaliation, through confiscation of his property, for his involvement in a class action lawsuit and his filing of other complaints and grievances[,]" *Clark*, 413 F. App'x at 815, it also expressly noted: "This does not mean that Clark would survive a motion for summary judgment by defendants on this claim[.]" *Id.* at 815, n. 7.